## T. L. PHILO, APPELLANT, v. MARGARET BUTTERFIELD AND LEWIS BUTTERFIELD, APPELLEES.

**Usury:** The lender of money at a lawful rate of interest can not be charged with usury, when, without his knowledge or consent, the agent of the borrower applies for and negotiates a loan, and receives from the borrower a sum of money, which the borrower previously agreed to pay him if he would secure the loan.

THIS was an appeal from a decree rendered in the district court of Douglas county, brought to this court under the provisions of the act of March 3, 1873. *General Statutes*, 716. The facts fully appear in the opinion of the court.

*T. W. T. Richards*, for appellant, said that the evidence showed that Philo (the mortgagee,) never contracted for, nor received anything more than lawful interest; that he had no knowledge and received no part of the *bonus* paid Wright by Butterfield; that the excess over lawful interest was paid to Wright by Butterfield *for procuring the loan;* that Wright was the agent of Butterfield in the matter; and under such circumstances there was no usury in the transaction. *Tyler on Usury*, Chap. VIII, 156, 172. Such a transaction was not usurious at *Common Law. Dagnall v. Wigley*, 11 *East*, 43. *Salarte v. Melville*, 14 *Eng. Com. Law*, 73. *Buxter v. Buch*, 10 *Vermont*, 548. The common law is law within the state of Nebraska. *Gen. Stat.*, 159.

*Mr. Richards* also cited the folowing cases, as quite decisive, if not more so, upon this point. *Coster v. Dilworth*, 8 *Cow.*, 299. *Condit v. Baldwin*, 21 *N. Y.*, 219. *Elmer v. Oakley*, 3 *Lansing*, 416. *Conover v. Van Mater*, 3 *Green*, (*N. J.*,) 481. *Rogers v. Buckingham*, 33 *Conn.*, 81.

*Strickland and Webster*, for appellees, argued that a

bonus paid to the agent of a lender of money was usury, and that, in the cases cited by appellant as decisive of the matter in the state of New York, very able dissenting opinions were delivered, and it was very doubtful if they had been acquiesced in by other states. *Tyler on Usury*, 170. Besides, an agent cannot so deal that the profits shall belong to him, and not to the principal. *Dunlap's Paley on Agency*, 51, 62. *Armstrong v. Toler*, 11 *Wheat.*, 258. Nor is it necessary, that the lender should have had an actual intent to violate the statute, to make the contract usurious. *Ins. Co. v. Ely*, 2 *Cow.*, 706. *Maine Bank v. Butts*, 9 *Maine*, 55.


GANTT, J.

This is an action upon a note and mortgage which were executed by the defendants to the plaintiff, to secure the payment of a loan of money. The answer admits two hundred and fifty dollars to be due to the plaintiff for money borrowed, but alleges that the plaintiff ought not to recover, because the note and mortgage were given on an actual loan of two hundred and fifty dollars, and that the balance of fifty-four dollars expressed in the note was included therein as a bonus, and therefore made the loan usurious. Hence the plea of usury is the only defense.

All the evidence taken in regard to the charge of usury is substantially as follows: Lewis Butterfield testifies that he went to L. R. Wright to obtain a loan of money, and that Wright told him he could get some money for him if he could secure the payment by mortgage on real estate, but that he would have to pay a heavy interest, and then says: "we agreed that I should give a note, and mortgage for three hundred and four dollars with interest thereon, for the sum of two hundred and fifty dollars, which I did and received the two hundred and fifty dollars, and executed the note and mortgage to T. L. Philo."

17

The plaintiff testified that he advanced of his own money the three hundred and four dollars stated in the note, and the loan was made through Wright; also that he was to receive twelve per cent. interest, and that he had no knowledge of and had nothing to do with the individual transaction between Wright and the defendants.

L. R. Wright testifies that Butterfield came to him to hire the money, and offered to secure it by mortgage, but that he told him he had no money to spare, and knew of no one from whom he would be likely to get it, except from a man in Des Moines, if he had it; that several days after, the defendant called on him and said money was very hard to get, and that he would give fifty dollars to get it; but that he told the defendant to look around, and if he could not get the money, he would see what he could do for him; that the defendant came the third time and said it was impossible for him to get the money in Omaha; and that then the defendant agreed to pay him fifty dollars to get the money for one year at twelve per cent., and to secure it by note and mortgage. This witness also says that he went to Des Moines, mainly, to obtain the money for the defendants, and got from plaintiff six hundred dollars, and let the defendants have three hundred and four dollars, and defendants paid him fifty dollars for his time, trouble, and expense, and paid to Neville four dollars for making abstract of title and drawing papers; and further says that he acted at the request of, and as the agent for the defendants; that he had previously loaned out money for the plaintiff.

We think that this evidence as we find it in the record in this transaction, very clearly shows that Wright acted only as the agent of the defendants, and his testimony as to this fact is not contradicted by that of Butterfield. On the contrary, the testimony of Butterfield rather corroborates that of Wright.

It is also clear from the evidence, as it appears by the

record, that at the several times when the defendant applied to Wright to negotiate the loan for him, he had no money of the plaintiff's in his hands, and did not then know whether he could obtain the loan from the plaintiff.

Now the question presented for our consideration on the facts of this case is: Will the lender of money at a lawful rate of interest, be affected with the vice of usury, when, without his knowledge or consent, the agent of the borrower applies for and negotiates a loan, and receives from the borrower a sum of money which the borrower previously contracted with him to secure the loan?

It is a settled rule of law which will not be questioned, that in all cases where a person employs another as his agent to loan money for him, and places the funds in the hands of the agent for such purpose, the principal is bound by the acts of his agent; and if the agent charges the borrower of such money unlawful interest, or even demands and receives from the borrower a bonus for such loan, and appropriates it to his own individual use, either with or without the knowledge of his principal, the principal is affected by the act of his agent.

In contemplation of law, the acts of the agent in such transaction are the acts of the principal, because the nature of the business which he has placed in charge of his agent furnishes the means of violating the law. In such business transaction by agency, there cannot be an agreement between the lender through his agent and the borrower, and a separate, distinct contract between the agent and the borrower, because it is in consideration of the loan that the unlawful interest or bonus is paid, and hence, the whole transaction must be a single indivisible proposition, it is but one contract only.

It is said that, "in all cases in which the frauds and injuries of servants, have been held to affect their employers, it appears that the employment afforded the means

of committing the injury." *Dunlap's Paley's Agency*, 306.

But I apprehend, that when the person who negotiates the loan acts only as the agent of the borrower, who has employed him and contracted with him to pay him a stipulated price to secure the loan, the rule is different, and the lender, if he loans the money in good faith, at a lawful rate of interest is not affected by the vice of usury. I think, that in such a case, as between the borrower and his agent, there is a substantive, independent contract, entirely different from any unlawful contract for money; and to connect such contract with that of the loan, would be to connect distinct and independent transactions with each other, and thereby make two contracts, each one of which may be fair and legal in itself, into one which is prohibited by law. It is not the purpose of the law to inflict a loss or punishment upon an innocent person, who has not, by himself or *his* agent, participated in any transaction prohibited by law, nor by any employment on his part afforded the means of infringing the law. Hence, in accordance with these rules of law, and in their application to the facts of this case, as they appear from the record, I think that the question above propounded must be answered in the negative; and that the judgment must be reversed, and the cause remanded for a new trial.

REVERSED AND REMANDED.

MAXWELL, J., concurs.