PRENTISS D. CHENEY, APPELLANT, V. SAMUEL A. WHITE,
MARY A. WHITE, AND THE UNION MUTUAL LIFE
INSURANCE COMPANY OF MAINE, APPELLEES.

1. **Usury.**  If a person employ another as his agent to loan money,
and puts the funds in his hands for that purpose, if the agent
charge unlawful interest, or even receives from the borrower a
bonus for such loan the transaction is usurious.

2. ————.  In such case the usury may be plead in an action by the
principal although he had no knowledge of the unlawful agree-
ment, and derived no advantage therefrom.  The case of *Philo
v. Butterfield*, 3 Neb., 256 cited with appoval.

3. **United States Homestead Act.**  Where a claimant of land
under the United States homestead act has made proof at the
proper land office of having done everything required to entitle
him to a patent, he can execute a valid mortgage of the land
although the patent be not issued.

APPEAL from the district court of Johnson county.
The opinion states the case.

*B. F. Perkins* and *J. H. Broady*, for appellant, cited
*Nycum v. McAllister*, 33 Iowa, 375.  *Watson v. Voor-
hees*, 14 Kan., 328.  *Frisbie v. Whitney*, 9 Wall., 187.
*Myers v. Croft*, 13 Id., 291.  *Robbins v. Bunn*, 54 Ill.,
48.  *In Re Cross*, 2 Dillon Circuit, 320.  *Rector v.
Rotten*, 3 Neb., 172.  *Ewing v. Howard*, 7 Wall., 499.

*S. P. Davidson*, for appellees, cited *Baggs v. Lou-
denback*, 12 Ohio, 156.  *Rains v. Scott*, 13 Ohio, 115.
*Corcoran v. Powers*, 6 Ohio State, 37.  *Morton v. Ruth-
erford*, 18 Wis., 298.  *McFarland v. Carr*, 16 Id., 259.
*Kyger v. Ryley*, 2 Neb., 25.  *Miller v. Little*, 47 Cal.,
348.  *Dawson v. Merrill*, 2 Neb., 124.  *Dittingham v.
Fisher*, 5 Wis., 480.  *Webb v. Hoselton*, 4 Neb., 308.

LAKE, CH. J.

This case is brought into this court by appeal. It was commenced originally to obtain the foreclosure of a mortgage, given to secure the payment of five promissory notes for $25 each, to the plaintiff. Two defenses are interposed: *first*, usury; and, *second*, that at the time of the execution of the mortgage the premises therein described were occupied and claimed as a homestead, under the act of congress approved May 20, 1862, entitled, "an act to secure homesteads to actual settlers on the public domain," and for which the patent had not then been issued.

In the court below there was a general finding in favor of the defendants, and the case dismissed; from which the plaintiff appealed.

I. As to the defense of usury, we think it is made abundantly good by the evidence, and that the case is brought fairly within the rule heretofore announced by this court in the case of *Philo v. Butterfield*, 3 Neb., 256.

There is really but very little conflict in the testimony. It establishes conclusively, that the defendant, being in need of money, applied first to the witness Perkins to procure a loan for him. Perkins at this time was the agent and attorney of the plaintiff, as Cheney himself testifies. In answer to this application for money, Perkins informed White, that he could obtain $500 for him, on five years time, *at seventeen per cent interest per annum*, together with an additional charge of $15 as his commission for doing the business, making the entire cost of the money to White for the first year, twenty per centum of the amount received. Perkins, as it appears, applied to Cheney, who resided in Jerseyville, Ills., for the money, which was sent, to be delivered to White when the necessary papers were executed. This

business was all attended to by Perkins acting as Cheney's agent all the while. White was required to execute and deliver: *first*, a note for $500, payable in five years, and five interest notes for $60 each, payable in one, two, three, four and five years respectively. These notes were all made payable to one Byron Murray, Jr., whose place of residence is not disclosed; and, *second*, in addition thereto, he was required to execute five notes for $25 each, in one, two, three, four, and five years, together with a mortgage to secure the same to the plaintiff, the latter being the notes in controversy.

It is claimed, on the part of the plaintiff, that the last five notes were given to him as a commission for procuring the loan of the $500 from Murray. But we do not think that the testimony justifies this conclusion. Cheney, it is true, testifies, that: "In February, 1872, B. F. Perkins, then my attorney in my transactions with S. A. White, made known to me, that White wished to procure a loan of $500 on the security of one hundred and sixty acres of land in Johnson county, Nebraska. As an inducement, White promised to pay me $125 if I would obtain a loan for his use for the term of five years. The preliminary talk and arrangements were made between B. F. Perkins on my behalf, and Mr. White, as I believe." He says further: "In consideration of the $125 to be paid me by White I did borrow the money for him. I investigated the value of the land. I approved and recommended it as good security." But Cheney fails entirely to tell us from whom he borrowed the money. He does not say that he made any application to Murray therefor, or had any communication with him respecting it. The only way that Murray figures in this transaction, and all we can ascertain respecting him is, that the $500 note, together with the five $60 notes and mortgage to secure them, were made to him. Besides it appears that Cheney sent the money to his agent Per-

kins for the use of White by his own individual bank check. But even if the money actually belonged to Murray, its investment was intrusted entirely to Cheney, who employed Perkins to do the business.

In *Philo v. Butterfield*, before cited, this court said: "It is a settled rule of law, which will not be questioned, that in all cases where a person employ another as his agent to loan money for him, and places the funds in the hands of the agent for such purpose, the principal is bound by the acts of his agent; and if the agent charges the borrower of such money unlawful interest, or *even demands and receives from the borrower a bonus for* such loan, and appropriates it to his own individual use, either with or without the knowledge of his principal, the principal is affected by the act of his agent." We think that the application of this wholesome rule to the facts proven by the testimony is decisive of the case. This business was all intrusted to, and transacted by Perkins, while acting confessedly as Cheney's agent, and it is clearly proved that he contracted for an usurious rate of interest.

II. As to the second defense, all that we deem it necessary to say is, that White was not prohibited by the homestead act from executing this mortgage. He had lived upon the land the requisite length of time, and made his proof at the proper land office of having done everything that is required to entitle him to a patent. The mere delay of the officers of the government, in such case, in issuing the evidence of his title, the patent, could not be held to deprive him of the right to make such disposition of the land, either by deed or mortgage as he might desire. On this point we must hold with the plaintiff.

For the reason, therefore, that the transaction was tainted with usury, and that the particular notes here in

controversy were based entirely upon an usurious consideration, the judgment must be in favor of the defendants, dismissing the case at the costs of the plaintiff.

JUDGMENT ACCORDINGLY.