WILLIS A. OLMSTED AND MARY E. OLMSTED, PLAINTIFFS IN ERROR, v. THE NEW ENGLAND MORTGAGE SECURITY CO., DEFENDANT IN ERROR.

1. **Usury.** Where usury is pleaded the burden of proof is upon the party pleading the same. But when usury in the transaction is proved, the holder of a negotiable instrument based thereon must show that he is a *bona fide* purchaser before maturity to be protected.

2. ———. Where a loan of $350 was effected by the Corbin Banking Co., and $100 retained as commissions, *Held*, that the proof showed it to be the agent of the lender, notwithstanding a recital in the application that it was the agent of the borrower.

ERROR to the district court for Butler county. Tried below before POST, J.

*Phelps & Thomas*, for plaintiff in error, cited 11 Central Law Journal, 203. *Clark v. Sisson*, 22 N. Y., 312. Tyler on Usury, 421. *Philo v. Butterfield*, 3 Neb., 259. *Cheney v. White*, 5 Neb., 261. *Cheney v. Eberhardt*, 8 Neb., 423.

*D. G. Hull* and *E. R. Dean*, for appellee, cited *Palmer v. Call*, U. S. Circuit Court of Iowa, Opinion by Judge Love. Tyler on Usury, 103, 156, 172. *Condit v. Baldwin*, 21 N. Y., 219. *Dragnel v. Wigley*, 11 East, 43. *Solastie v. Mellville*, 7 Barn & Cress, 427. *Coster v. Delwink*, 8 Cowen, 299. *Smith v. Marine*, 21 N. Y., 219. *Bell v. Day*, 32 N. Y., 165. *Baxter v. Buck*, 10 Vt., 548. 16 N. J. Eq., 537. 44 Iowa, 32. 45 Iowa, 46, and the result summed up in 17 Albany Law Journal, 119.

MAXWELL, CH. J.

This is an action to foreclose a mortgage on real estate. The defense is usury. The cause was referred to a referee, who found the issues of law and fact in

favor of the defendant in error. A decree being rendered in its favor, the plaintiffs bring the cause into this court by petition in error.

It appears from the testimony that one A. W. Ocobock advertised in the newspapers that he was making loans in Butler and Dodge counties through one C. C. Cook. That the plaintiff in error, Willis A. Olmsted, applied to Cook for a loan, and was directed by him to Ocobock to see if the plaintiff's farm which was offered as security would be acceptable to the company. Ocobock sent an agent to examine the farm, who, being satisfied therewith, presented the following application for the loan to the plaintiff for his signature:

"Whereas I have this day employed the Corbin Banking Company to negotiate for me a loan of $400, for the term of five years, with interest at the rate of ten per cent per annum, upon a note and mortgage securing the same, which shall be a first lien upon my farm in Butler county, Nebraska. Now then if they shall succeed in negotiating said loan within thirty days, upon the usual conditions exacted by eastern money-lenders as to security, perfecting of title, insurance, etc., I agree to pay the said Corbin Banking Company the sum of $80, which shall be in full of their commissions and the commissions of those whom they employ to assist them in making said negotiations.

"WILLIS A. OLMSTED.
"DAVID CITY, NEB., Feb. 24, 1876."

The above was on a printed form, leaving only the amount, time, county, state, and name of the applicant to be filled out. This was accompanied by a printed form containing a minute description of the farm, which concluded as follows:

"The statements made in the above application and the supplement made herewith to the Corbin Banking Company are true, and are made by me to be used by

said company as my agent in procuring me the above loan.

"WILLIS A. OLMSTED, Applicant.

"Dated DAVID CITY, NEB., Feb. 24, 1876."

Upon this application a loan of $350 was effected, a promissory note, of which the following is a copy, being executed by Olmsted:

"$350.00        SUMMIT P. O., March 27, 1876.

"Value received, on the twentieth day of March, 1881, I promise to pay The New England Mortgage Security Company or order three hundred and fifty dollars, with interest from date until paid, at ten per cent per annum as per coupons attached, at the office of the Corbin Banking Company, 61 Broadway, New York City. Unpaid interest shall bear interest at ten per cent per annum. On failure to pay interest within five days after due, the holder may collect the principal and interest at once.

"WILLIS A. OLMSTED."

This note had coupons attached, and was secured by mortgage to "The New England Mortgage Security Company," the interest being made payable at the office of the "Corbin Banking Company, New York City," on the first day of April of each year. Upon the execution of the note and mortgage, Olmsted was paid $250. In the spring of 1878 he received from Ocobock the following:

"W. A. OLMSTED, Summit:

"Dear Sir—Your interest amounting to $35 will be due at the office of The Corbin Banking Company, 61 Broadway, New York City, April 1, 1878.

"It is important that you should make prompt payment, as you will see by enclosed circular.

"Respectfully Yours,

"A. W. OCOBOCK.

"Are your taxes paid?"

This letter is on the same sheet with the circular referred to, and is printed, except the names of Olmsted and Ocobock, and there is printed in red ink across the face of the same the following:

"If the amount is sent to me to forward, an additional charge of fifteen cents is made to cover exchange.

"A. W. OCOBOCK."

The circular referred to is as follows:

" THE CORBIN BANKING CO.

" NEW YORK.

"Dear Sir—Please say to parties having interest payable at this office on a day certain, that their money is due here *on that day*, and to save costs must *be* here.

"When not paid *promptly* we shall return to the owners, and they will send to an attorney for foreclosure. The five and thirty days' delay named in notes relates to the right to collect the principal sum, and does not prevent a foreclosure for non-payment of interest.   As soon as a bill is filed the attorney's fees accrue, and when debtors will not take care of their interest at maturity they cannot complain if a suit and heavy costs follow.

" Respectfully Yours,

" A. CORBIN, President."

Two other circulars of similar import from the Corbin Banking Co. were introduced in evidence.   All the business both before and after the making of the loan appears to have been done by the Corbin Company. To show that the Corbin Banking Co. was not the agent of the defendant in negotiating the loan, the defendant introduced the deposition of Henry Saltonstall, who testified that he was president of the defendant, and that on or about the 27th day of March, 1876, the treasurer of the Corbin Banking Company offered him this loan, which after examination he agreed to buy, and on or about the 12th day of April of that year,

paid for the same the sum of $350.00. He also testified that the defendant had no "agent or brokers at any place or places who act for said company in placing loans of money for it." Also that defendant had received no rebate, commission, or fee, nor had he any knowledge of "any commission, or fee of any kind paid or agreed to be paid."

The question to be determined is, whose agent was the Corbin Banking Company in negotiating this loan? If it was the agent of the Olmsteds, they are not entitled to relief from the rapacity of their own employee; in other words, if the Banking Co. acted only as the agent of the borrower, who entered into a contract with it to pay it a stipulated price for obtaining the loan, and the defendant in good faith loaned its money for a lawful rate of interest, it will not be affected by the vice of usury, however glaring it may be, as the law in such case will not permit a party to sustain loss who has not, by himself or his agent, loaned money at usurious rates. *Philo v. Butterfield*, 3 Neb., 259. But on the other hand, if a person places money under the control of another to loan for him, and the agent charges the borrower unlawful interest, or receives a bonus from him for such loan, either with or without the knowledge of the principal, he is affected by the act of his agent. The reason is, the principal has entrusted the business of making loans to him and has placed the money in his hands for that purpose, and in transacting the business by agency, there cannot be a distinct agreement between the lender through his agent with the borrower, and a different one between the agent and borrower, as it is in consideration of the loan that the unlawful interest or bonus is paid. The whole transaction is but *one* contract, which being made by his agent, the lender is bound by it. Id.

In the case at bar, Mr. Saltonstall, while making

explicit denials and statements as to matters not material to the issue, fails to deny specifically that the Corbin Banking Company was the agent of the defendant. There was no cross-examination, and the questions, whether intentionally or not, are so framed as to admit of general answers. A party pleading usury takes the laboring oar and must establish its existence. But when it is proved, the holder of the paper must show that he is a bona fide purchaser thereof before maturity. The burden of proof as to the good faith of the transaction devolves upon him. *Wortendyke v. Meehan*, 9 Neb., 228–9, and cases cited. The pretended sale of the note and mortgage on the 27th day March, before they were executed, was evidently a mere device to avoid the usury laws. The mere statement in a printed form furnished by the Corbin Banking Co., that the borrower employed it as his agent to negotiate the loan, does not of itself conclude the parties, nor more than *prima facie* establish such agency. In fact, in most cases it is ground of suspicion, as showing on the face of the application an attempt to evade the law. But the court will look at the entire transaction to determine the question of agency.

In the case of *Cheney v. Woodruff*, 6 Neb., 151, the agent making the loan testified that in making the loan he acted as the *agent of the borrower*, but as soon as the loan was effected he acted as the agent of the *lender*. The facts in this case are very similar to those upon which that case was decided. Here the banking company effected the loan, took the notes and mortgage in favor of the defendant, and continued its agent in this transaction until the commencement of this action. They seem to be acting together, at least so far as this case is concerned, the defendant in the role of innocent purchaser, and the Banking Co. as agent of the borrower; but the proof fails to establish

either relation. The Banking Company was clearly the agent of the defendant, and it must take the consequences of its agent's acts in making the loan. The finding of the referee that this was a Nebraska contract and not governed by the laws of New York, is correct, but the defendant in error is merely entitled to the principal without interest, less the payments heretofore made, and the plaintiffs in error are entitled to costs in both courts. *Philo v. Butterfield, supra. Cheney v. White,* 5 Neb., 256. *Cheney v. Woodruff*, 6 Id., 185. The decree of the district court is modified in conformity to this opinion.

DECREE ACCORDINGLY.