MARY M. PAYNE *et al.*

*v.*

GEORGE W. NEWCOMB *et al.*

*Filed at Ottawa November 10, 1881.*

1. AGENCY—*whether of borrower or lender of money.* A loan agent who is required to learn the situation of the property given in security for money loaned, and examine and ascertain the title, and who is liable to the lender for any loss he may sustain for any mistakes made in examining the title, or from over-valuation of the property, is the agent of the lender in making the loan of money, notwithstanding he is to be paid for his services by the borrower alone.

2. SAME—*notice to principal that his agent is charging a commission on a loan effected by him.* Where it is understood between a money lender and a loan agent that the latter, in effecting a loan from the former, is to get his commissions from the borrower, as compensation for his services in examining the title to the property given in security, etc., the lender will be chargeable with notice of the commissions paid to his agent, the same as if paid directly to him, and by him paid to the agent.

3. USURY—*in commissions paid to agent.* Where a loan of money is made through a loan agent for the highest legal rate of interest, under an arrangement between the lender and the agent that the latter is to impose upon the borrower the payment for his services in examining the title to the property given in security and ascertaining its value, and the agent deducts from the sum loaned a commission of five per cent, and a further commission of two and a half per cent for procuring an extension of time of payment, the exacting and payment of such commissions will render the loan transaction usurious.

4. SAME—*when it may be deducted.* Usury paid with the principal can not be recovered back, but as long as any portion of the principal remains upon which the usurious interest accrued and was paid, such usurious interest may be deducted from or set off against the remaining principal, and this can not be prevented by a settlement between the parties finding the amount due, which includes usury.

5. SETTLEMENT—*not conclusive as to usury therein.* While, generally, a settlement finding the amount due is conclusive upon the parties unless impeached for fraud or mistake, the defence of usury is an exception to the rule, and any items of usurious interest included therein, so long as any part of the principal debt remains unpaid, may be deducted or set off against the principal.

6. CHANCERY PRACTICE—*reference to master.* Where a bill in chancery involves numerous transactions of a somewhat complicated character in regard to the facts, it is highly proper that the case should be referred to the master in chancery to state and report an account thereof to the court.

WRIT OF ERROR to the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Livingston county; the Hon. FRANKLIN BLADES, Judge, presiding.

Mr. E. F. BULL, and Mr. L. G. PEARRE, for the plaintiffs in error:

This court has frequently held, where accounts involve large sums of money and are intricate, that the case must be referred to the master to render a concise and accurate statement, and it will not be permitted that this labor be imposed upon the court, even by stipulation of the parties. *Moshier* v. *Norton,* 83 Ill. 523; *Moss* v. *McCall,* 75 id. 190; *Steere* v. *Hoagland,* 39 id. 264; *Bressler* v. *McCune,* 56 id. 475; *Riner* v. *Touslee,* 62 id. 266; *Groch* v. *Stenger,* 65 id. 481.

The testimony of Newcomb is of itself sufficient to condemn this transaction as usurious. That when the agent making a loan, with the knowledge or consent of the lender, takes from the borrower pay for his services, the transaction is usurious, counsel cited *Philo* v. *Butterfield,* 3 Neb. 259; *Cheney* v. *White,* 5 id. 261; *Rogers* v. *Buckingham,* 33 Conn. 81.

Mr. CHARLES H. WOOD, for the defendants in error:

If a party voluntarily pays a principal sum and usury upon it, the matter is ended, and no recovery can be had as to the usury paid. *Hadden* v. *Jones,* 24 Ill. 381; *Tompkins* v. *Hill,* 28 id. 519.

So, when an old transaction is settled and closed, and a new loan made, the borrower will not be allowed to set up usury in the former transaction as against the new loan. *Puterbaugh* v. *Farrell,* 73 Ill. 213.

As Newcomb, in making the various loans, was acting for the borrower, he had the right to charge the commissions, and his retention of the same will not make the contract usurious. *Phillips* v. *Roberts*, 90 Ill. 493; *Ballinger* v. *Bourland*, 87 id. 513.

If a borrower, without an original agreement, instead of paying the legal interest agrees to pay interest thereon, as well as on the principal, for further forbearance, it is legal, and not usurious. *Haworth* v. *Huling*, 87 Ill. 23; *Rodes* v. *Blythe*, 2 B. Mon. (Ky.) 335.

A note given for interest upon arrears of interest is not usurious. *Stewart* v. *Petrie*, 55 N. Y. 621; *Camp* v. *Bates*, 11 Conn. 487; *Wilcox* v. *Howland*, 23 Pick. 167.  ·  ·

Mr. JUSTICE WALKER delivered the opinion of the Court:

Complainant Mary M. Payne was the owner of about 400 acres of land in Livingston county, and in July, 1867, she and her husband wishing to procure a loan of $2000, applied to Newcomb, a loan agent in Chicago. He loaned them the money, took their note, payable to Herrick Stevens in two years, with ten per cent interest, semi-annually. To secure the loan they executed a trust deed for the land to one Pierce, with the usual power of sale. Complainants subsequently procured other loans from Newcomb, and gave similar notes and trust deeds on the land. When each loan was made, Newcomb deducted from the amount five per cent, which he claimed as a commission for procuring the loan. There were several extensions of the time for payment, and when they were made he charged two and a half per cent, as he claims, for procuring them. When interest was not promptly paid it was compounded at the rate that the notes bore. Complainants claim to have borrowed no more than $6630, and Payne so testifies, and to have paid in all $5800, and yet Newcomb, on the 1st of November, 1877, furnished a statement in which he claimed there was still due $11,967.17.

It is claimed that Newcomb, in making these loans, was Stevens' regular agent; that being such, he made the loans and retained the commissions with the knowledge and approval of Stevens.

The bill was filed to enjoin a sale of the land under the power in the trust deeds, and for an account to ascertain what is equitably due after deducting usury and illegal charges. On a hearing the court dismissed the bill, and· complainants appealed to the Appellate Court for the Second District, where the decree was affirmed. They thereupon bring the record to this court on error, and urge a reversal.

Defendants in error insist Newcomb was not the agent of Stevens when the several loans were made, but was the agent of plaintiffs in error, and had a legal right to charge them for such services,—that Stevens is in nowise responsible for such acts. Newcomb testifies that at the time these several loans were made, it was a part of his business to loan money for different persons upon commission. He further testifies: "In making loans in this State, in the usual course of business, a loan agent, for the commission he gets, has to first find the money, learn and know all about the property, often go on it, examine the title, and see to the collection of the interest and principal, when due. If the title proves defective, and it is shown that the agent has not been careful enough, or should have known about the defects before making the loan, or if the property is valued too high, whereby losses ensue, it is understood that the agent makes himself personally liable. * * * I had to submit to him the applications for every one of these loans, and afterwards sent him Payne's letters. I became his agent immediately after he agreed to make the loan, in looking after it. I stated in my direct examination that if I made any mistakes in examining the title he would have held me for it. As for the value of the property, I submitted to him all the evidence I had, and he decided for himself. So far as drawing the

papers and examining the title is concerned, he entrusted the matter to me. All moneys were delivered through me to the borrower. I often made extensions without consulting Stevens at all, and if he had objected to the extensions, I would have been compelled to borrow the money from other parties and protected Mr. Payne. Don't think I ever consulted with Stevens in regard to those extensions. Don't know whether he ratified what I did in that particular or not. Don't know whether he ever knew that the extensions were made. I took the responsibility myself. In a considerable degree he left these matters with me, to deal with according to my own judgment. * * * In making these loans Herrick Stevens never agreed to and never did pay me anything, and it was always understood that I was to get my money from the borrower." He further testified that he had been a loan agent since 1854; that he commenced making loans for Stevens in that year, and had so continued up to the time he testified—more than twenty years.

This evidence of Newcomb establishes the fact that he was Stevens' agent, beyond all dispute. He, however, says he was the agent of Payne before the loan, and of Stevens afterwards; that an agent has to find the money, learn the situation of the property, examine and ascertain the title, and see to collecting the principal, interest, etc; that if the title proves defective, or the property is valued too high, and loss ensues, it is understood the agent renders himself personally responsible. We may ask, liable to whom? To his principal, of course. If the agent of the borrower, when making the valuation and examining the title, over-values the property, or the title proves defective, what possible loss can result to the borrower? Then he must be liable to the lender, and if so, it can only be because he is his agent. And Newcomb proves this by his own testimony. He says he had to submit the application to Stevens, and if he had made any mistakes in examining the title, that Stevens would have held

him liable.   Why should Stevens hold him liable for such losses if he was the agent of Payne until the loan was completed, and the agent of Stevens afterwards, as he testifies? If liable to Stevens for such mistakes, it was because, and only because, he was his agent; and that he was, in the examination of the property, fixing its value and determining the character of the title, we entertain no doubt.   It would be absurd to suppose Stevens would loan his money on the valuation fixed and the title reported by Payne's agent.

From all of this testimony we are compelled to believe that Newcomb was the agent of Stevens from the time the application was made for the loan.   The whole transaction is not susceptible of any other construction.   It is apparent that Stevens regarded and relied on Newcomb as his agent, and would have held him liable for loss growing out of neglect of duty.   Newcomb testifies that Stevens would have held him liable for a mistake in examining the title.   If so, then he was Stevens' agent as well before as after the loans were made, and no such distinction can be reasonably drawn as that Newcomb was Payne's agent before and Stevens' after the loans were made.

Did Stevens know that Newcomb was charging for his services, and collecting it from the borrower?   Newcomb says that it was the understanding he was to get it of the borrower, and that establishes the fact beyond all cavil. Were these payments of commissions of benefit or profit to Stevens?   They unquestionably were, as they paid his agent for long continued and valuable services rendered by Newcomb for him.   No one will believe that Newcomb thus incurred liability to Stevens, and rendered skillful and valuable services for him for more than twenty years, as a mere gratuity.   It was not so understood.   Newcomb says he was to get his pay from the borrower.   Stevens then paid what he owed to Newcomb by requiring the agent to impose it on the persons to whom loans were made.   The arrange-

ment amounted to no more or less than requiring the agent to loan for a per cent sufficiently high to yield Stevens the highest rate of interest allowed by the law, and to pay the agent for his responsibility, labor, skill and trouble. In effect the transaction is the same as had the loan been made at fifteen per cent, and ten had been paid to Stevens and five to Newcomb. This was the result which was by the parties intended before the inception of the transaction. It was in pursuance of an arrangement of the lender and his agent.

Again, we are strongly impressed that there is included a large amount of usurious interest in the claim of the balance due on these loans, as well as compound interest. The statement rendered by Newcomb contains a charge of $319.19 for interest on interest, and another charge for his commissions of $545.50, and from the amount he states was loaned, and admits was paid, we must suppose a large amount of commissions had been paid, also interest on interest. When over $12,000 was claimed to be due when Newcomb testified, it must be that there had been deducted from payments made a large sum for such items, or for some other illegal charge. We are of opinion that the evidence shows that the amount claimed contains usurious charges, and that usury has been charged and retained.

It is, however, claimed, that Stevens is not liable for what Newcomb retained and charged for what is called commissions,—that he had the right to charge any sum he chose, and that would not render the loan usurious. Had Stevens not known that Newcomb was making such charges, it may be that he would not have been affected by them. But here it was agreed between Stevens and Newcomb that the latter should charge a commission of the borrower to pay him for his services. Stevens obtained the services of Newcomb. They were of value to him, and no one will pretend that Newcomb rendered them as a gratuity. They were rendered for Stevens, and they were paid for by him by indirectly

charging the amount to and requiring the borrower to pay it, and this, too, by the express authority of Stevens. Had he directed Newcomb to loan at fifteen per cent for the first year, and ten per cent for each succeeding year, and to retain five per cent on the loan for the first year, and two and a half per cent for renewals and extensions, and to retain the extra per cent above ten per cent as compensation for his services, would any one say that was not usury? And in what does the transaction differ by the form given it by the agreement of the parties? In each case Stevens would get Newcomb's services, and compel the borrower to pay for them.

There is no more familiar rule in the law than that the usury laws can not be evaded by mere pretences, shifts, or evasions. This rule runs through all of the books, and requires the citation of no authority in its support. The policy of the statute is to protect the weak and necessitous from the oppression of the strong, and to sanction such transactions as this would be to defeat that policy. Courts have no right to judge of the policy, but must enforce the law as they find it. Whenever deemed proper, the General Assembly will change the policy by modifying or repealing the statute, but until so modified or repealed we have no power to alter or change its provisions.

The Supreme Court of Nebraska say, it is a well settled rule of law that will not be questioned, "that in all cases where a person employs another as his agent to loan money for him, and places the funds in the hands of the agent for such purpose, the principal is bound by the act of his agent; and if the agent charges the borrower of such money unlawful interest, or even demands and receives from the borrower a bonus for such loan, and appropriates it to his own individual use, either with or without the knowledge of the principal, the principal is affected by the act of the agent. In contemplation of law the acts of the agent are the acts of the principal, because the nature of the business which he

has placed in charge of his agent furnishes the means of violating the law. In such business transactions by agency there can not be an agreement between the lender, through the agent, and the borrower, and a separate, distinct contract between the agent and borrower, because it is in consideration of the loan that the unlawful interest or bonus is paid, and hence the whole transaction must be a single indivisible proposition,—it is one contract only." *Philo* v. *Butterfield,* 3 Neb. 256. And to the same effect are the cases of *Cheney* v. *White,* 5 Neb. 261, and *Cheney* v. *Woodruff,* 6 id. 151. In this last case, where the agent received from the borrower a note and mortgage for the bonus or commission for making the loan, it was held that it tainted the loan with the vice of usury.

The Court of Appeals in New York, by a divided court, lay down as a rule in such cases, that a bonus received by the agent above the legal rate of interest, without the knowledge, consent or sanction of the principal, and under circumstances where no such knowledge, sanction or consent can be reasonably inferred, will not render the contract usurious. *Condit* v. *Baldwin,* 21 N. Y. 219. The question was again before the court in *Bell* v. *Day,* 32 N. Y. 165, and the rule was sanctioned by a divided court, and partly on the rule of *stare decisis.* A majority were against the rule, but two of the judges felt bound by the case of *Condit* v. *Baldwin, supra,* otherwise the fact the agent received the bonus or commission would have been held to taint the transaction with usury even without the knowledge or assent of the lender, as was held by the Nebraska court.

This is, we believe, as far as any court has gone in that direction. And Tyler, in his work on Usury, p. 170, says that the question may be regarded as settled in that court; but from the strong and able and well fortified opinions of the dissenting judges it is doubtful whether the rule will be readily assented to by the courts of other States. That

author lays down the rule, at page 156, that "if the agent, in good faith, makes the loan for another, and exacts a bonus besides the legal interest, for his own benefit, without the authority or knowledge of the principal, the loan is not thereby rendered usurious."

In *Rogers* v. *Buckingham*, 33 Conn. 81, it is said: "This would have been unquestionably an usurious loan if made by David Bulkley. It was in fact made by his son, as his agent. The question in the case is therefore one of authority. If the loan as made was authorized originally by David Bulkley, or was subsequently and intelligently ratified by him, it was usurious; but if the additional sum of ten dollars was exacted by and paid to the agent for the use and benefit of the agent only, without prior authority from the principal or subsequent knowledge and ratification by him, it was not usurious. It is not found as a fact that the agent was authorized to take the usurious excess. Such authority will not be presumed when the agency is special, and limited to a single transaction. It may be presumed when the agency is general, and embraces the business of making, managing and collecting the loans of a moneyed man; and the facts found show such an agency in this case. But it is a presumption of fact and may be rebutted, and whether it was or not in this case, it was the duty of the auditor to determine. * * * And we think that the peculiar and distinct manner in which the ten dollars excess was agreed to be paid, in connection with the other facts found, would have justified the auditor in finding that it was an unauthorized exaction by the agent for his compensation, and must have been so understood by the borrower."

These cases all recognize the rule that if the bonus or commission is taken by the agent with the consent, or by authority, or with the knowledge of the principal, or if, without his knowledge, authority or consent, he afterwards ratifies the act of the agent, knowing the facts, the loan must be

treated as tainted with usury. The rule is reasonable, and tends to prevent the evasion of the provisions of the law. It is true the rule of the Nebraska court is broader, but embraces the rule of the other courts.

In the case of *Muir* v. *Newark Savings Inst.* 1 Green, (N. J.) 537, it was held, that if an agent in making a loan accepts from the borrower a bonus above the legal rate of interest, it will not render the transaction usurious unless the fact was known to the lender, or he received the benefit of the bonus. Neither knowledge by nor profit to the lender was proved, and hence the case was held not to fall within the rule.

We are referred to the case of *Ballinger* v. *Bourland,* 87 Ill. 513, as announcing a different rule. This is a misapprehension of the scope of the decision. In that case, Bourland lived in Peoria, and he, as the agent of Ballinger, procured a loan of $17,000 for him, and charged Ballinger a commission of five per cent on that sum for procuring the loan, and $100 for going to Chicago and obtaining a release of the premises from a mortgage on them of $16,000, which charges Ballinger paid to Bourland. The court say: "There appears but the simple transaction itself, without any pretence by the testimony that the insurance company was in any way privy to receiving the money by Bourland, or that the agreement therefor was with the knowledge or authority of the insurance company, or that it derived any benefit therefrom."

In that case the insurance company was the lender and Ballinger the borrower, and nothing appears to show Bourland was the agent of the company. The opinion proceeds on the ground that the insurance company was in no way privy to the payment by Ballinger to Bourland of the commission and the $100 for his services in obtaining the release of the premises from the mortgage, or. that the agreement was with the knowledge or authority of the lender, or that it

derived any profit therefrom, thus negatively asserting that had the lender been privy to the agreement or it had been made with the knowledge or authority or to the profit of the lender, the transaction would have been usurious. That case falls far short of justifying the transaction in the case at bar. It may not announce the rule as broadly as other courts, but it contains nothing that sanctions the taking of a commission or bonus by the agent with the privity, knowledge or consent of the principal. We are not required to go the length of the Nebraska cases to condemn this transaction.

We are also referred to the case of *Phillips* v. *Roberts*, 90 Ill. 492, as an authority in favor of defendants in error. In that case Phillips was a loan broker, and as such had loaned to one Benden a sum of money, and charged and received from him $150 as commissions. Roberts claimed that under an agreement existing between him and Phillips he was entitled to $50 of the commissions thus received, for having taken Benden to Phillips as a customer. Phillips refused to pay, and Roberts sued him to recover the amount, and it was held he might recover. That case in nowise involved the question under discussion in this case, and consequently is not applicable to its facts. Roberts had contracted with Phillips, and his contract in nowise involved any question of usury between the borrower and lender. Whether there was usury or not, could in nowise affect the contract between Roberts and Phillips.

It is insisted, that plaintiffs in error, having come to a settlement and agreed upon the amount that was due, are estopped thereby to claim that any portion of the amount thus found due embraces usurious interest. Whilst such an accounting in regard to ordinary business transactions is conclusive on the parties unless impeached for fraud or mistake, the defence of usury is an exception to the general rule. If such settlements were held to be conclusive, then the statute

would be a dead letter. The simple promise to pay the principal and usurious interest would be an admission that the borrower owed the amount, and would be equally conclusive, and cut off the defence. The rule in this court is, that usury paid with the principal can not be recovered back, but so long as any portion of the principal remains, out of or in connection with which the usurious interest accrued, it may be deducted from or set off against such principal. The cases of *Hawhe* v. *Snydaker*, 86 Ill. 197, *Mitchell* v. *Lyman*, 77 id. 525, *Peddicord* v. *Connard*, 85 id. 102; *Jenkins* v. *Greenbaum*, 95 id. 11, *House* v. *Davis*, 60 id. 367, *Hadden* v. *Innes*, 24 id. 381, *Farwell* v. *Meyer*, 35 id. 41, *Saylor* v. *Daniels*, 37 id. 331, and *Jenkins* v. *The International Bank*, 97 id. 568, announce and fully establish this rule.

Owing to the number of transactions involved, and the somewhat complicated facts and items in this case, it is highly proper that it should be referred to a master to state and report an account to the circuit court.

For the errors indicated the decree of the Appellate Court is reversed and the cause remanded.

*Decree reversed.*

Mr. CHIEF JUSTICE CRAIG: I do not concur in the decision in this cause.