NEW ENGLAND MORTGAGE SECURITY CO., APPELLANT, v. HENRY HENDRICKSON ET AL., APPELLEES.

Usury. Where an agent entrusted with the money of his principal to loan exacts a bonus or commission from the borrower in addition to lawful interest the contract will be tainted with usury.

APPEAL from the district court for York county.

*Hull & Stearns*, for appellant.

*Montgomery & Harlan*, for appellees.

MAXWELL, J.

This is an action to foreclose a mortgage. It is alleged in the petition that on the twenty-fifth day of November, 1876, the defendant Hendrickson executed and delivered

to the plaintiff his promissory note for the sum or $250, due in five years, with interest from date at ten per cent per annum; and to secure the payment of the same executed a mortgage to the plaintiff on the west one-half of the south-west one-fourth of section eight, town eleven, range one, west of the sixth principal meridian. The prayer is for a decree of foreclosure and sale of the mortgaged premises. The answer admits the execution of the note and mortgage, but states that the plaintiff, through its agent, Frederick W. Liedtke, made the loan in question to the defendant, and actually loaned to the defendant only the sum of $200, and that he has paid thereon the sum of of $46.18. The case was referred to a referee, who found that the amount of money actually received by the defendant from the plaintiff was the sum of $189, which was the sole consideration for said note and mortgage, and that the defendant has paid thereon the sum of $46.18. The plaintiff filed a motion to set aside the report, which was overruled, and a decree of foreclosure and sale was rendered in its favor for the sum of $153.82. The plaintiff appeals to this court.

The question involved in this case is the liability of the principal for the acts of his agent in exacting usurious interest in making the loan.

Sec. 2 of ch. 28 of the Revised Statutes of 1866, which was in force at the time this loan was effected, provided that: "Interest upon the loan or forbearance of money, goods, or things in action, shall be at the rate of ten dollars per year upon one hundred dollars, unless a greater rate, not exceeding twelve per cent per annum, be contracted for by the parties."

The question to be determined is, is a principal who insists upon the validity of a contract made for him by an agent bound by the acts of this agent in making the contract? As a general rule the adoption of the agency in part adopts as a whole, because the principal is not per-

mitted to accept and confirm so much of a contract made by one purporting to be his agent, as he shall think beneficial to him, and reject the remainder. 1 Parsons on Contr., 5th Ed., 51–2. *Wilson v. Poulter*, 2 Strange, 859. *Smith v. Hodson*, 4 T. R., 211. *Hovil v. Pack*, 7 East., 164. *Brewer v. Sparrow*, 7 B. & C., 310. *Wright v. Crookes*, 1 Scott, N. R., 685. *Hovey v. Blanchard*, 13 N. H., 145. *Farmers' Loan Co. v. Walworth*, 1 Comst., 447. *N. E. Marine Ins. Co. v. De Wolf*, 8 Pick., 56. *Culver v. Ashley*, 18 Id., 300. *Bigelow v. Denison*, 23 Vt., 565. *Hodnet v. Tatum*, 9 Geo., 70. *Elam v. Carruth*, 2 La. Ann., 275. *Cook v. The Bank of Louisiana*, Id., 324. This principle is admitted, but it is said that it does not apply to a loan of money made by an agent for his principal.

In the case of *Acheson v. Chase*, 28 Minn., 211, decided by the supreme court of Minnesota, one Chase, a resident of New York, authorized one Alley, a resident of Minnesota, to loan money for him at twelve per cent interest, upon land security to be taken in Chase's name, Alley to receive no compensation from Chase for his services, but was authorized by him to charge and collect from the borrower a reasonable compensation for making the loan. Acheson applied to one Parsons, a resident of Minnesota, for a loan of $500. Parsons promised to secure the money at twelve per cent, he to retain $65 for his services in effecting the loan. Parsons then applied to Alley for a loan of the desired amount, and promised him $50. With very much circumlocution in procuring the money, which has a very suspicious appearance, $500, less $68, was delivered to Acheson, $50 of this sum being paid to Alley and $18 to Parsons.

The court held that the principal was not affected by the act of the agent in making the loan. The court say (page 735): "Was the taking of the $50 by Alley a taking of defendant of a rate of interest greater than twelve per cent,

the rate allowed by law when the loan in this case was made? We think not. The $50 may be considered either as a bonus, or as in part bonus and in part compensation for Alley's services in and about making the loan. If it was all bonus—that is to say, a gratuity without consideration—the taking of it was wholly the act of Alley done upon his own responsibility. The defendant in no way authorized it. He knew nothing of it until after the loan was consummated and the money and papers had passed."

In *Condit v. Baldwin*, 21 N. Y., 219, the plaintiff, a resident of New Jersey, placed in the hands of one Williams, an attorney at law in Wayne county, N. Y., $400 to invest for her at lawful interest. One Baldwin, a resident of Wayne county, applied to one Mills, a resident of that county, to procure a loan for him of $400 for two years on his note. Mills applied to Williams for the loan. Williams stated that he preferred to loan the money on bond and mortgage, as in that event he would be paid for drawing the same and for examining the title. An arrangement was then entered into whereby Mills promised to pay Williams $25 as attorney's fees. Mills then received $400 from Williams and paid it to Baldwin, and charged him $40 for his (Mills') services. Of this sum Mills paid $25 to Williams. It was held by a divided court that this did not constitute usury. It is said (page 224): "It is undeniable that Williams took and received the $25 paid for alleged services rendered by him. If he took and received it as the plaintiff's agent, then he took and received it for her and as her money." The decision is placed upon the ground that the plaintiff had not authorized the taking of usurious interest, and had not received the same nor had any knowledge that it was received. Comstock, Denio, and Wells dissented. In the able dissenting opinion of Judge Comstock it is said (page 229): "I think it material next to observe that only one contract was made,

which embraced the whole transaction. There was no agreement between the plaintiff, through her agent and the borrower, to lend $400 at lawful interest, and then a separate and distinct agreement between the agent and the borrower for the extra $25. It was all included in one contract. The agent said in substance, 'I will lend you the $400 if, besides the legal interest which you pay to my principal, you will pay to me the sum of $25.' This was a single indivisible proposition, and as such it was accepted by the borrower. In consideration of the loan he agreed to repay it at a certain day with interest, and he agreed, also, to pay $25 more to the lender's agent. Here was one consideration and one agreement. That agreement might all have been expressed in one or in two writings, or it might have been without any writing. In fact, one of these promises was evidenced by a promissory note, the other rested in parol. These circumstances are immaterial. There was but one original agreement, which included the whole subject. Where there is usury at the root of a transaction, it has never before been thought that the merely formal separation of the borrower's contract into different parts could take the case out of the statute. If the business had not been done through an agent, not a doubt would be entertained, because nothing is clearer in principle or better settled by authority than that contracts are equally usurious, whether the excessive interest be paid down or only agreed to be paid, and whether the payment be promised in the same instrument with the principal debt or in a collateral agreement, oral or written. The test question always is, whether the agreement for the loan includes more than lawful interest to be reserved or taken in any manner whatsoever." This case was followed in *Bell v. Day*, 32 N. Y., 165, and *Estevez v. Purdy*, 66 Id., 446, as stated in the opinions upon the principle of stare decisis.

In *Algur v. Gardener*, 54 Id., 360, it was held that

where the extra sum paid to the agent was a part of the contract of loan—that is, where there was not an independent agreement for the benefit of the agent—but the sum charged for the use of the money was in excess of legal interest, it tainted the transaction with usury.

In *Gokey v. Knapp*, 44 Iowa, 32, it was held that where an agent for the loaning of money lent it at usurious rates, it would not be presumed that he had authority to make the loan at usurious rates so as to affect his principal.

In the case of *Payne v. Newcomb*, 100 Ill., 611, one Payne being the owner of about four hundred acres of land in Livingston county, applied to one Newcomb, a loan agent in Chicago, for a loan of money. Various sums were loaned by Newcomb to Payne, amounting in the aggregate to the sum of $6630, the notes being made payable to Herrick Stevens, and a trust deed to secure the same being made to one Pierce. When each loan was made, Newcomb deducted from the amount five per cent, which he claimed as commission for procuring the loan. There were several extensions of the time for payment, and when they were made he charged two and a half per cent for procuring them. When interest was not promptly paid it was compounded at the rate the notes bore. Payne paid in all $5800 on the indebtedness, but Newcomb claimed there was still due $11967.17. On a bill being filed for an account, and to enjoin a sale under the trust deed, it was insisted that Newcomb was not the agent of Stevens when the several loans were made, but was the agent of the plaintiff in error (Payne), and had a legal right to charge for his services in procuring the loans. The court say: "This evidence of Newcomb's establishes the fact that he was Stevens' agent beyond all dispute. He, however, says he was the agent of Payne before the loan, and of Stevens afterward; that an agent has to find the money, know the situation of the property, and ascertain the title, see to collecting the principal, interest, etc.;

that if the title proves defective, or the property is valued too high and loss ensues, it is understood that the agent renders himself personally responsible. We may ask, liable to whom? To his principal, of course. If the agent of the borrower, when making the valuation and examining the title, overvalues the property, or the title proves defective, what possible loss can result to the borrower? Then he must be liable to the lender, and if so, it can only be because he is his agent. And he proves this by his own testimony. He says he had to submit the application to Stevens, and if he made any mistakes in examining the title, that Stevens would have held him liable. Why should Stevens hold him liable for such losses if he was the agent of Payne until the loan was completed, and the agent of Stevens afterward, as he testifies? If liable to Stevens for such mistakes, it was because and only because he was his agent, and that he was, in the examination of the property, fixing its value and determining the character of the title, we entertain no doubt. It would be absurd to suppose Stevens would loan his money on the valuation fixed and the title reported by Payne's agent. From all this testimony we are compelled to believe that Newcomb was the agent of Stevens from the time the application was made for the loan. The whole transaction is not susceptible of any other construction. It is apparent that Stevens regarded and relied on Newcomb as his agent, and would have held him liable for loss growing out of neglect of duty. Newcomb testifies that Stevens would have held him liable for a mistake in examining the title. If so, then he was Stevens' agent as well before as after the loans were made, and no such distinction can be reasonably drawn as that Newcomb was Payne's agent before, and Stevens' after the loans were made. Did Stevens know that Newcomb was charging for his service and collecting it from the borrower? Newcomb says that it was the understanding that he was to get it from the bor-

rower, and that establishes the fact beyond all cavil. Were these payments of commission of benefit or profit to Stevens? They unquestionably were, as they paid his agent for long continued and valuable services rendered by Newcomb for him. No one will believe that Newcomb thus incurred liability to Stevens, and rendered skillful and valuable services for him for more than twenty years as a mere gratuity. It was not so understood, but Newcomb says he was to get his pay from the borrower. Stevens then paid what he owed to Newcomb by requiring the agent to impose it on the persons to whom loans were made. The arrangement amounted to no more nor less than requiring the agent to loan for a per cent sufficiently high to yield Stevens the highest rate allowed by law, and to pay the agent for his responsibility, labor, skill, and trouble." The court held that the principal was bound by the acts of the agent, and that the loans were usurious. CRAIG, CH. J., did not concur, but upon what ground does not appear.

In the case of *Rogers v. Buckingham*, 33 Conn., 81, it is said: "This would unquestionably have been an usurious loan if made by David Bulkley. It was, in fact, made by his son as his agent; the question in the case is therefore one of authority. * * * Such authority will not be presumed when the agency is special and limited to a single transaction. It may be presumed, where the agency is general and embraces the business of making, managing, and collecting the loans of a moneyed man, and the facts found show such an agency in this case."

In all these cases the rule is recognized that if the commission paid to the agent was authorized or assented to by the principal, the loan will be tainted with usury. The case cited from Minnesota seems to go further and hold that even if an agent receives a bonus in excess of lawful interest it does not render the loan usurious.

The law regulating interest fixes the maximum rate and

declares that "if a greater rate of interest than is herein-before allowed shall be contracted for or received, or reserved, the contract shall not therefore be void; but if in any action on such contract proof be made that illegal interest has been directly or indirectly contracted for, or taken, or reserved, the plaintiff shall only recover the principal, without interest, and the defendant shall recover costs; and if interest shall have been paid thereon, judgment shall be for the principal, deducting interest paid," etc. Rev. Stat., 241.

The statute applies to all loans of money, whether made personally by a principal or through the intervention of an agent. If the sum exacted for the loan is in excess of the maximum fixed by law the contract is thereby rendered usurious, whether the unlawful interest was contracted for by the principal himself or paid as a commission to his agent for his services in making loans. If this was not so, a father could employ his son to make loans for him, or a business man one of his clerks, and these persons would be authorized to charge the borrower the highest rate of interest allowed by law, and in addition such commission to the agents as the necessities of the debtor would compel him to pay. Such ruling would, in effect, repeal the law. It would change the plain, unambiguous language of the statute fixing the highest rate of interest allowed in any case so as to impose no restriction whatever; because, if loans made by an agent are not restricted or controlled by the statute, all that is necessary to evade the law is to employ an agent to make the loan.

It is said, however, that the principal is not bound by the acts of the agent where he exceeds his authority—that is, where he charges more than lawful interest, or retains a portion of the principal, as in this case, as a bonus. It is a sufficient answer to this objection to say that the agent is selected by the principal for the purpose of loaning its funds. The principal may require such security and im-

pose such conditions upon such agent as it sees fit, and has the means at hand to protect itself from the illegal acts of its own employees.

In this case it is claimed that the agent of the lender was the agent of the borrower for the purpose of procuring the loan—that is, that Hendrickson made the Corbin Banking Co. his agent for the purpose of procuring the loan. The loan seems to have been effected through A. W. Ocobock, who appears to have been an agent of the Corbin Banking Co., and the Banking Co. seem to have been acting as agent of the plaintiff. We are aware that there are strong denials of these facts in the testimony, but the conduct of the parties is conclusive on those points.

In conclusion, we hold that where an agent is engaged in the business of loaning money for his principal at the highest rate allowed by law, and contracts for a bonus or commissions from the borrower in excess of lawful interest, the contract will be tainted with usury. The whole transaction is but one contract, and being within the scope of the agency the lender is bound by it. *Olmsted v. N. E. Mtg. Security Co.*, 11 Neb., 487. *Cheney v. Woodruff*, 6 Id., 151. *Cheney v. White*, 5 Id., 261. *Philo v. Butterfield*, 3 Id., 259.

The judgment of the district court is clearly right, and is affirmed.

JUDGMENT AFFIRMED.