## WILLIAM W. STEVENS ET AL.
### v.
## DENNIS MEERS.

1. PLEADING—ANSWER.—An answer setting up in general terms that defendants made their arrangement with the complainant, etc., is sufficient to let in proof that the arrangement was made with complainant's agent.

2. USURY—LOANS BY AN AGENT—Where one deposited money to the account of another with privilege of loaning it, stipulating that it should net the owner ten per cent., such person becomes the general agent of the owner; and if the agent exacts usury upon his loans, the principal is presumed to have known and authorized it. ¡Unless such presumption of knowledge is rebutted, the transaction will be usurious.

3. CROSS-BILL—TENDER.—To an action to foreclose a mortgage, the defendants filed a cross-bill for relief on the ground of usury. *Held*, that it was properly dismissed for a failure of defendants to offer to pay the amount due with legal interest thereon.

ERROR to the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding. Opinion filed August 8, 1882.

Mr. EGBERT PHELPS, and Mr. GEORGE S. HOUSE, for plaintiffs in error; that the authority of a general agent to take usury will be presumed, cited Rogers v. Buckingham, 33 Conn. 81; Payne v. Newcomb, 100 Ill. 611. ·

Messrs. HILL & DIBBELL, for defendant in error; that the allegations and proof must correspond, cited McKay v. Bissett, 5 Gilm. 499; White v. Morrison, 11 Ill. 366; Ross v. Utter, 15 Ill. 402; Chaffin v. Kimball, 23 Ill. 36; Ohling v. Luitjens, 32 Ill. 23; Fish v. Cleland, 33 Ill. 243; Bush v. Connelly, 33 Ill. 243; Fergus v. Tinkham, 38 Ill. 407; Taylor v. Merrill, 55 Ill. 52; Tiernan v. Granger, 65 Ill. 351; Carmichael v. Reed, 45 Ill. 108; House v. Davis, 60 Ill. 367; Kellogg v. Wilson, 89 Ill. 357.

The burden of proving usury lies on the defense: Puterbaugh v. Farrell, 73 Ill. 213; Wilson v. Kirby, 88 Ill. 573; Boylston v. Bain, 90 Ill. 283.

And it must be shown by a clear preponderance of evidence: Mosier v. Norton, 83 Ill. 521; Hawhe v. Snydaker, 86 Ill. 197; 1 Jones on Mortgages, § 643; 1 Edwards on Bills, § 502.

The cross-bill should have offered to pay the amount due with legal intent: Tooke v. Newman, 75 Ill. 215.

PLEASANTS, J.    This was a bill filed by Meers to foreclose a mortgage executed by Stevens and wife to secure his note of April, 9, 1874, at one year for $3,000, with interest at ten per cent. per annum, and the decree was for the full amount appearing due by said note, less two years' interest, for which credits were indorsed.

The answer set up usury, alleged as follows:

"The defendant William W., being in want of money, applied to said complainant for a loan of three thousand dollars, and that after some preliminary conversation between them, said complainant proposed to loan to the defendant William W., said sum, provided the defendant William W. would agree to pay him interest therefor at the rate of 14 per cent. per annum, and execute his note secured by a mortgage on the defendant's homestead property; and the defendant William W. Stevens, finding it inconvenient to raise the money in any other way, consented and agreed to said corrupt proposal, and did thereupon make and execute the note in said bill mentioned, and these defendants, to secure the same, made and executed said mortgage, and the defendant William W. Stevens delivered the same to said complainant, whereupon said complainant by his son and agent, Robert Meers, delivered to this defendant William W. his check on the First National Bank, in the city of Joliet, for the sum and amount of twenty-eight hundred and eighty dollars, which was the consideration and the only consideration of said note and mortgage."

Defendant testified, some years after the note was given, that complainant in person proposed to make the loan at the usurious rate mentioned, and that he had no recollection of any conversation with Robert until the latter brought him the check for the money loaned, although he says complainant often referred to him while complainant; testified that he said

nothing to defendant about the rate except that he, complain-
ant, should have ten per cent., but referred him to his son,
with whom the arrangement, whatever its terms, was in fact
made.

They agree in stating that W. E. Henry was present at the
conversation, and the latter testified that he heard no mention
of any usurious rate, though complainant did say that " the
rate was ten per cent. if a man loaned direct," and that " his
son Robert would lend the money or be his agent to lend it,"
and that he, witness, left them before the conversation was
concluded.

Robert testified that he made the agreement with defendant;
that he at first asked five per cent. for his commissions, but
the defendant said it was too much, and so he compromised
on four, which he accordingly deducted from the principal,
giving his check for the difference, $2,880.

Counsel for defendant in error, assuming the proof by this
testimony to be that the agreement was not made with the
latter directly, argue that it is therefore fatally variant from
the allegation.   We think not, if Robert's action was author-
ized.   The case made by the answer, and by which substan-
tially as made, the defendant must abide, is upon an executed
agreement between the parties for a loan by Meers to Stevens
of $3,000 for one year at fourteen per cent. and certain pay-
ments by Stevens to Meers on account of it, which agreement
is therein identified by reference to certain papers as ex-
changed in the execution of it.   If it had been further de-
scribed as made by defendant with Meers in person when it
was in fact made with his agent as such, that would certainly
have been a misdescription of the transaction, but only in a
particular not affecting its identity in fact, or its legal effect
as alleged.   But really it is not so described.

The conversation in the presence of Henry took place about
April 1st, and all of it was preliminary.

The papers were not exchanged until the 9th.   It was
wholly immaterial to the case made by the answer, whether
the conversation on the 1st was as Stevens testified or not, or
whether it ever occurred at all, provided either the complain-

ant or his agent thereafter and before the exchange of the note and mortgage for the check agreed upon that arrangement. The answer alleges that after some preliminary conversation with the complainant in person, if you please, but not how long after "said complainant proposed," etc., not in person, by special messenger, by an agent, or in any other particular manner, but in terms so general that they might embrace either, and the rule of pleading which construes language susceptible of more than one meaning most strongly against the pleader, applies only where those meanings are different in legal effect, which therefore would not reach this case.

The argument for defendant in error on this point, is too fine, and has no foundation in merit.

The question, then, is whether Robert was authorized to make the arrangement. It is conceded that he was the agent of his father to make this loan.

From that fact, however, it would not necessarily follow, nor be presumed, that he was authorized to take usury. It must appear that the principal knew he would take it, or learning afterward that he had taken it, ratified the act. Boylston v. Bain, 90 Ill. 285.

The facts are, that defendant in error brought to Joliet $17,000, which he deposited to the credit of his son, and gave him entire charge of the business of loaning it for him, and Robert so took it. While he might have loaned the whole by one transaction, he was not bound, nor requested, nor expected to do it, but was authorized to use his discretion, without limitation, so far as appears, except that he was to get for his principal, ten per cent. net, on what he should loan. That made him a general agent. Rogers v. Buckingham, 33 Conn. 81; Payne v. Newcombe, 100 Ill. 611.

And if such an agent takes usury, the presumption is that the principal knew and authorized it. Ibid.

Such presumption, however, is not conclusive. In the case cited from 33 Conn. it was held to have been rebutted, but the decision was upon findings by the auditor who did not report the testimony in full. Here we have the evidence preserved

in the bill of exceptions, and in it find nothing tending to rebut it. The testimony of the principal himself goes no further than that he did not know what terms were made, and did not himself receive more than ten per cent. That he put the money in charge of his son as well for the purpose of making a business for the latter, as for getting at least ten per cent. net himself, we can have no doubt, upon his own statement, and none of the circumstances or other testimony creates any. He may not have known that fourteen per cent. was the rate fixed by his son's agreement with the defendant. It rather looks as if he first understood it was fifteen.

But we feel quite confident he well understood it would be and was, more than ten. What is said above as to the correspondence between the allegation and proof of the agreement, applies to the payment of $100 each in addition to the ten per cent. reserve in the note for the two extensions. From the latter however, the actual expense of the advertisement, and reasonable compensation to the agent for his labor in preparing it, and causing it to be inserted, should be deducted.

The residue thereof, together with all other payments, amounting together, as we understand it, to $700, should be deducted from the sum of $2,880 and the balance found as the amount of the mortgage indebtedness.

The cross-bill was properly dismissed for failure of an offer by complainant therein, to pay the sum received with six per cent. interest thereon, and the costs thereof, should be adjudged against him.

Reversed and remanded for further proceedings in conformity herewith.

Reversed and remanded.