J. B. DINSMORE & CO., PLAINTIFFS IN ERROR, v. BENJAMIN STIMBERT, DEFENDANT IN ERROR.

1. Negotiable Instruments: RIGHTS OF BONA FIDE PURCHASER. On the case stated, *held*, that to enable a party to resist the payment of a negotiable note in the hands of a *bona fide* purchaser before maturity, for value, in the ordinary course of business, without notice, etc., on the ground that the said note was procured through the fraud and circumvention of the payees in some way or manner unknown to him, in and about the transaction and negotiation by the defendant had with the said payees, for the appointment of the defendant, as agent, to sell a certain patent fence post, etc., he must show that he is not chargeable with *any laches or negligence*, or misplaced confidence in others.

2. ———: ———: INSTRUCTIONS. Also *held*, that an instruction which, substantially, told the jury to find for the defendant, if they should find from the evidence "that the defendant before signing said note, used the diligence and care that a man of ordinary care and prudence would have used under similar circumstances, to ascertain its contents," was erroneous. That the jury should have been told, that to make such defense available, the defendant must show that he was *not guilty of any neglect in signing the paper*.

28

3. ——: PLEADING: PRACTICE. The answer of defendant "says, that he never signed said note," etc., "nor is his signature attached thereto genuine, but that, if he did sign said note, or if his signature thereto is genuine, then it was procured through the fraud, circumvention," etc. *Held*, that said answer was a substantial admission of the signing of the note, and that the submission to the jury for a special finding of the question— "did the defendant sign the note sued on?" was error.

THIS was an action on a promissory note for $90.00, dated Sept. 29, 1879, and payable six months after date, to the order of Laird & Dezendorf. The note came into the hands of plaintiffs, who alleged that it was bought by them in good faith, for a valuable consideration, and without notice of any failure in consideration or defect. On trial before WEAVER, J., and a jury, in the district court for Clay county, verdict and judgment were for defendant, and plaintiffs brought the cause here for review on a petition in error.

*Hastings & McGintie,* and *Stone & Stone,* for plaintiffs in error, cited 1 Daniels on Neg. Inst., 699. *Ross v. Doland,* 29 Ohio St., 473. *Selser v. Brock,* 3 Ohio St., 302. *Douglas v. Matting,* 29 Iowa, 498. *Nebeker v. Cutsinger,* 48 Ind., 436. *Shirts v. Overjohn,* 60 Mo., 305. *Frederick v. Clemens,* Id., 313. *Citizens Nat'l Bank v. Smith,* 55 N. H., 593. *Kimble v. Christie,* 55 Ind., 140. *Smith v. Columbus Bank,* 9 Neb., 31. Story on Promissory Notes, sec. 191. Story on Bills, 188. *Bassett v. Avery,* 15 Ohio St., 299. Edwards on Bills and Notes, 312.

*John D. Hayes,* for defendant in error, cited *Gibbs v. Linaburg,* 22 Mich., 479. *Walker v. Egbert,* 29 Wis., 194. *Taylor v. Atchinson,* 54 Ill., 196. *Cline v. Guthrie,* 42 Ind., 227. *Abbott v. Rose,* 62 Me., 194. *Griffiths v. Kellogg,* 39 Wis., 290. *Briggs v. Ewart,* 51 Mo., 245. *Brown v. Reid,* 79 Pa. St., 370. *Puffer v. Smith,* 57 Ill., 527. *Van Brunt v. Singley,* 85 Ill., 281. 1 Daniels Neg. Inst., sec. 849.

COBB, J.

The answer of the defendant in the court below is altogether indefinite and uncertain.    He first alleges that he never signed the note, and that the signature thereto is not genuine.   He then alleges, that if he did sign the note, or the signature thereto is genuine, then, that it was procured through the "fraud and circumvention of either Laird or Dezendorf or both of them, in some way or manner unknown to the defendant in the transaction and negotiation by the defendant had with the said Laird and Dezendorf in and about the appointment of the defendant, as agent, to sell a certain patent fence post, without any fault or negligence on the part of the defendant.   That the only paper that he ever signed with the said parties, or either of them, was a contract represented by said Laird and Dezendorf to have been a contract, whereby said defendant was to be constituted the agent of said Laird and Dezendorf for the sale of a patent fence post, and that when he signed said paper he believed the representations to be true, and relied upon the representations of the said Laird and Dezendorf as being true, and was compelled to rely upon said representations, because there was no person in the immediate vicinity upon whom he could call to read the same," etc.

The answer in *Douglas v. Matting*, 29 Iowa, 498, cited by plaintiff in error, is substantially the same as this, and that was held by the supreme court of that state to substantially admit the execution of the note.   And such must be true of the pleading under consideration.   The defendant in the court below must be held to know his own signature.   If the signature to the note was not his, then it was simply a case of forgery, and all of his pleading and testimony in regard to the representations of Laird & Dezendorf, his own inability to readily read English, etc., become immaterial.

We think the court below erred in submitting the ques-

tion: "Did the defendant sign the note sued on?" for a special finding, and thereby placing prominently before the jury a question, which, as we have seen, must be regarded as admitted by the answer. And we think it altogether possible that their general finding was controlled by this special one.

The court below on the trial instructed the jury as follows:

1. If you shall find from the evidence, that the defendant signed the note sued on, and that Grimes & Dinsmore bought the note before due, for a valuable consideration, in the usual course of business, in good faith, and without any notice of any defense existing to said note, then you will find for the plaintiffs for the amount now due on the note, according to its terms.

2. Unless you shall find from the evidence that the defendant, without fault on his part, was procured to sign said note, and that said defendant was unable to read said note, and did not understand the contents thereof, but, under the false representations of the parties who took the note, fully believed the paper signed to be of a different character and not a note, and that there was no consideration for said note—I say, if you shall find from the evidence that the defendant signed the note, you may find for the defendant.

3. If you find that the defendant received no consideration therefor, and that the defendant signed the same upon a false and fraudulent representation of the parties who took the same, fully believing he was signing a paper of a different character—that is, if you further find that the defendant, before signing said note, used the diligence and care that a man of ordinary care and prudence would have used under similar circumstances, to ascertain its contents, and was without fault.

4. If the note was not signed by the defendant, your verdict will be for the defendant.

Dinsmore & Co. v. Stimbert.

Except in one particular, but little fault can be found with the substance of these instructions, and that they treat it as an open and prominent question, whether the defendant did in fact sign the note. Yet we think that they are constructed in such a way that the jury might, and probably did, misunderstand their import and bearing. The true question was whether the defendant was tricked into signing the note by the artifice, device, and deception, or false reading, of the parties to whom he gave the note, or whether he was overcome by the glib tongue, winning manners, and over persuasion of those men, and thus thrown off his guard, and acted without the use of due diligence in ascertaining the true nature and character of the paper which he signed.

The leading case of *Putnam v. Sullivan*, 4 Mass., 45, arose upon facts as follows: The defendants were merchants of Boston, one of them being absent in Europe, and the other, having occasion to make a journey to Philadelphia, entrusted with an apprentice or clerk of the house a number of papers, on which one of the house had written the name of the firm in blank, some to be used as notes endorsed by the house, and others as notes in which the house were to be promisors. These papers were entrusted to a clerk of the defendants to be used when money was to be advanced on the sale of goods by the house on commission, or to renew the notes of the house when due at the banks. The clerk was directed to deliver one of the blanks to the promisor upon the note sued on in the action, to enable him to renew a note signed by him in the bank, of which the house were endorsers, and for which he had requested a blank to be left. The promisor called on the clerk for the blank endorsement left for him, and one was delivered to him; afterwards pretending that by some mistake it had become useless to him, and feigning to burn in the clerk's presence the name of the firm endorsed, procured another blank; and

by a similar pretension and contrivance he obtained a third and a fourth blank endorsement, the last of which was in fact used for the purpose for which the house had directed a blank endorsement to be given him. The promisor had used one of the prior blank endorsements for making the note sued on in the action; which had been negotiated with the endorsement remaining in blank with the plaintiff. C. J. Parsons, in the opinion of the court, says: " The counsel for defendants agree, that generally an endorsement obtained by fraud shall hold the endorsers according to the terms of it; but they make a distinction between the cases where the endorser through fraudulent pretenses has been induced to endorse the note he is called on to pay, and where he never intended to endorse a note of that description, but a different note and for a different purpose. Perhaps there may be cases in which this distinction ought to prevail, as if a blind man had a note falsely and fraudulently read to him, and he endorsed it supposing it to be the note read to him. But we are satisfied that an endorser cannot avail himself of this distinction but in cases where he is not chargeable with any laches, or negligence, or misplaced confidence."

Whatever may have been the course of decisions for a number of years after the date of the above case, we think it is quite generally followed now. To apply its doctrine to the case at bar, if the defendant signed the note in question through misplaced confidence in Laird & Dezendorf, then he was guilty of negligence and want of due diligence, and the loss must fall upon him.

In cases like this, where a note has passed into the hands of an innocent purchaser for value before maturity, we think that the defendant, before he can successfully defend on account of having been fraudulently induced to execute the note, must show a higher degree of diligence than that expressed in the instruction, in order to exclude the application of the rule, that where one of two

innocent persons must suffer a loss by reason of the fraud of a third party, the loss must fall upon the one whose act has furnished the means for the commission of the fraud. The reason of the rule we suppose to be, that while he, who has taken no part in the creation of the instrumentalities of fraud, could not have been guilty of negligence, or want of diligence, and thus contributed to the loss, the other could, and possibly was.

In the case of *Foster v. McKinnon*, Law Reports, 4 C. P., 704, decided in 1869, Byles J., delivering the opinion of the court, affirmed the charge of the chief justice at the assizes, in which he had directed the jury, that if the endorsement of the defendant of the bill of exchange sued. on was obtained on a fraudulent representation that it was a guarantee, and the defendant signed it without knowing that it was a bill, and under the belief that it was a guarantee, and if the defendant was not guilty of any negligence in so signing the paper, he was not liable as endorser to a *bona fide* holder. This case is approved. and followed by the courts of New York in *Whitney v. Snyder*, 2 Lansing, 477, and *Chapman v. Rose*, 56 N. Y., 137. The latter was a case almost exactly like the one at bar, the difference being only that between a patent hay-fork and pulley and a patent fence post. In that case the opinion closes as follows: "To avoid such evils, it is necessary at least to hold firmly to the doctrine, that he who by his carelessness, or undue confidence, has enabled another to obtain the money of an innocent person, shall answer the loss."

We do not think it sufficient, in the language of the instruction, that the defendant should have " used the diligence and care that a man of ordinary care and prudence would have used under similar circumstances," in order to throw the loss on the *bona fide* purchaser for value before maturity, in the ordinary course of business, but that he should, in the language of Byles, J., above cited,

have been not guilty of any negligence in so signing the paper. The above views render it unnecessary to notice the other errors assigned. The judgment of the district court is reversed, and the cause remanded for further proceedings according to law,

REVERSED AND REMANDED.