WILLIAM W. MILLER, APPELLEE, v. OLIVER P. HURFORD ET AL., AND REDICK & CONNELL, APPELLANTS.

1. Constitutional Law: BILLS. Where in the certificate of the president of the senate to a bill not signed by the governor it was stated that "this bill was duly presented to the governor of this state," etc., and in the certificate of the speaker of the house it

was stated "the foregoing bill was duly presented to the acting governor," etc., *Held*, That it will be presumed that the bill was presented to the person discharging the duties of the office.

2. ——: TITLE. The title of an act is not obnoxious to the constitution because it is entitled "An act to amend sections 50, 51, 71, and 105, of an act entitled An act" etc., (giving title and date of approval).

3. Taxes: TAX RECEIPT. A tax receipt is not evidence of the existence of a lien for taxes. Such lien must be proved by the assessment rolls unless from the issue made by the pleadings the tax is admitted.

4. ——: PLEADING: EVIDENCE. An answer which admits the several assessments, but claims that the same are illegal for certain causes set forth, shifts the burden of proof as to the assessment to the party charging the illegal acts.

5. Pleading: ILLEGAL BONDS. Where certain bonds of D. county were claimed by defendants to be illegal, *Held*, That the facts showing such illegality must be stated in the answer.

6. Taxes: ASSESSMENT. The law fixes a standard of value for the government of the assessors—the actual value of the property. But an assessment above or below the actual value is not void if the assessor has acted in good faith.

REHEARING of case in 11 Neb., 377, to which reference may be had for any further understanding of the facts.

*E. Estabrook* and *W. J. Connell*, for appellants.

*John D. Howe*, for appellee.

MAXWELL, J.

This case was before this court in 1881, and is reported in 11 Neb., 377. A rehearing was granted and the case again heard. The objections presented in the supplemental brief of the defendants will be considered in their order.

The first objection made by the defendants is, that the plaintiff brought an action of ejectment for the premises in question, and on the trial offered no evidence of title, and purposely submitted to a verdict against him. This it is

Miller v. Hurford.

-claimed is sufficient to defeat a recovery in this action. The defendants claim to be the owners of the land. There is no pretense that the plaintiff has any title to it, either by tax deed or otherwise. The position of the defendants, if we understand it, is this—that the plaintiff has no title by his tax deeds, but because on the trial in ejectment he failed to put them in evidence and have the court adjudicate upon their validity or declare them invalid, that therefore he has admitted their invalidity and is precluded from claiming any interest in the premises. If the defendants disclaimed ownership of this land or any interest therein, and alleged in their answer that the tax deeds of the plaintiff were valid, and the court found this to be true, it would defeat a recovery, because it is only when the title acquired by the tax deed fails that an action to foreclose the lien can be maintained. But the answer of the defendants shows beyond question that the tax deeds were invalid. The following are the allegations upon that point: "And these defendants further answering said petition, say that at the time said pretended taxes for the several years mentioned in plaintiff's petition became payable, and subsequently until the dates of said sales, and ever since, the said defendants and each of them owned and had within said county sufficient personal property out of which the amount of said taxes could have been made by distress and sale, yet the county treasurer of said county wholly failed and neglected to so attempt to make said taxes or take any action whatever in this behalf, as said plaintiff at the time of said purchases well knew."

Prior to the amendment of 1877 to the revenue law, the possession by the land owner of sufficient personal property in the county in which the taxes were due, from which the treasurer could have collected the amount assessed against the land, would defeat a tax deed, because the land was to be sold only when the treasurer was unable to collect the tax in any other manner. *Pettit v. Black*, 8 Neb., 52. *Wilhelm*

v. *Russell*, 8 Neb., 120. *Johnson v. Hahn*, 4 Id., 139. The defendants therefore plead the invalidity of the title, and show that the plaintiff did not become the owner of said premises by the tax deeds; and their statement in the brief that "he is by his own showing the owner of the premises, and nobody has disputed it," is not supported by the record.

Considerable stress is laid upon the form of the judgment in ejectment, that, "The defendant go hence without day," etc. A judgment is conclusive only as to the matters put in issue, and the only issue in that action was the title. The lien for taxes was not in issue.

*Second.* It is claimed that the petition should show *how* the taxes were due. The allegations of the petition are, that "a large amount of delinquent taxes, levied upon said land by the city of Omaha, and said county of Douglas, pursuant to law for city, county, and state purposes, had accumulated and were liens upon said lands, and that on or about said date the plaintiff purchased said lands at tax sale," etc. The allegations that the taxes were levied pursuant to law for city, county, and state purposes, and were a lien upon the real estate in controversy, are certainly equivalent to an allegation that the "taxes were regularly and lawfully assessed." But it is said the petition should allege the grounds upon which the tax title has failed. Why should it do so? There is no provision in the statute that the petition shall contain such an allegation, nor is it within the purview of the law. A petition to foreclose a tax lien is to be governed by the same rules as to allegations as any other petition in equity, and a general allegation is sufficient unless the default is of such a character as to require a statement of the facts; but one of the grounds of the invalidity of the deed is set up in the answer, viz.: That the defendants had sufficient personal property to pay the taxes due on said land.

*Third.* It is said, however, that the act of June 6th,

1877, is invalid because it was never presented to the governor. That question was fully considered when this case was formerly before this court, and we see no reason to change our decision on that point. The governor referred to in the certificate of the president of the senate and speaker of the house, was the person discharging the duties of the office of governor. A person elected to that office who was impeached and deposed from the office, if only temporarily, was not the governor while not discharging the duties of the office. The presumptions of the law are that a public officer performs his duty in the manner required by law, and when the speaker of the house of representatives and president of the senate certify that they presented a bill to the governor for his approval, it will be presumed that they presented such bill to the officer whose approval was necessary in order that the bill might become a law.

*Fourth.* But it is said that there are several subjects expressed in the title of the act of June 6th, 1871. The title of the act is "To amend sections fifty, fifty-one, seventy-one, and one hundred and five, of an act entitled An act to provide a system of revenue, approved February 15th, 1869, and to make further provisions for collecting the revenue." An act to amend two or more sections which are designated of an act, certainly is not objectionable, and if we reject the latter part as surplusage, the act, so far as it relates to the amendments to the several sections named, is certainly free from objection.

In the case of the *State ex. rel. v. McLaughlin*, 14 Cent. Law Journal, 454, decided by the Supreme court of Missouri in May,1 882, one R. C. Pate was indicted in the St. Louis criminal court for gambling. The defendant filed a plea to the jurisdiction, for the reason that the act of March 9th, 1881, making gambling of certain kinds a felony, *
* was unconstitutional and void, because the title of the act does not meet the requirements of sec. 28, art. 4 of the constitution (that no bill shall contain more than one sub-

ject, which shall be clearly expressed in its title,) etc.    The title of the act of March 9th, 1881, was as follows: " An act to amend section 1549, of article 8, of the Revised Statutes, relating to offenses against public morals and decency, or the public, police, and miscellaneous offences." The court held the title sufficient and the act valid.

In the case of *The City of Kansas v. Payne*, 71 Mo., 159, the title of the act was as follows: " An act to amend sections two, three, four, five, nine, eleven, fourteen, seventeen, and eighteen, of an act approved April 12th, 1877, * * and repealing sec. 184 of an act * * concerning the assessment and collection of the revenue, approved March 30th, 1872. It was held that so far as the statutes sought to be amended the title was sufficient, but as the section 184 sought to be repealed was an independent matter it was not within the title. See also *State v. Ranson*, 73 Mo., 78. The syllabus to the case of *Comstock v. Judge*, 39 Mich., 195, is as follows: "An act purporting by its title to revise certain enumerated sections of an act entitled," etc., and to add several new sections, contained a section not mentioned in the title but corresponding to a section in the revised act. The constitution requires the purpose of every statute to be expressed in its title. *Held*, that the practice of amending by reference to sections, instead of by reference to subjects or the entire statute, is not a satisfactory compliance with the constitutional requirement, but that where the amendment is plain and can be carried out, it may be held valid even though the section numbers of the original act and of the amendment are in confusion."

The court say (page 197): "As was discovered in *People*, *ex. rel. Chupoton, v. Common Council of Detroit*, 38 Mich., 636, it is no uncommon thing in our amendatory legislation to number sections wrongly or to append new sections to statutes without repealing others of the same numbers, so that duplicate numbers are often found in the same statute. In such case the latter section may practically repeal older

sections which are not repealed by name. The title to this act, when it refers to revising named sections and adding new sections to the statute, has a very undefined field opened to legislation touching the court in question, and we are not prepared to say that because it may be awkwardly framed it is therefore invalid. Its purpose is plain and we think it may be carried out."

In *Bowman v. Cockrill*, 6 Kan., 311, the title of the act, was "To provide for the assessment and collection of taxes," and a statute of limitation included in the act was sustained, because designed to aid in the collection of taxes.

In *Prescott v. Beebe*, 17 Id., 320, the title of the act was "To provide for the sale of school lands," and it was held. that a section declaring the lands subject to taxation after the sale was within the title, because it was a provision as to the terms of sale.

The case of *The State v. Bankers, etc.*, 23 Id., 499, is not in conflict with these decisions. In that case the title was "An act to amend sections two, four, seventeen, forty-one, and fifty-nine of an act entitled"—giving the title of the act of 1871. Section 78 of that act reads as follows: "The provisions of this act shall not apply to life insurance companies organized on the co-operation plan." This section was amended in 1875 as follows: "The provisions of this act shall not be construed so as to prevent any Masonic, Odd Fellow, religious or benevolent society of this state from issuing indemnity to any one against loss by death to any of its members," no reference being made to the section amended in the title. The court held the title sufficient as to the five sections named, but invalid as to section 78. The decision is similar to those of this court in *City of Tecumseh v. Phillips*, 5 Neb., 305, and *White v. The City of Lincoln*, Id., 505, but are not applicable to the case at bar.

Sec. 54 of the act of 1869 made taxes a perpetual lien upon real estate, Sec. 51 related to the payment of taxes,

Now, can it be said that an amendment that merely assigns to a purchaser at tax sale the lien of the state for taxes is so repugnant to the constitution that the court must declare it inhibited?   The authorities cited in support of the proposition are all our own, and none of them have gone to that extent.   The act of 1875 provides the mode of procedure, and this act applies to all cases to which the lien for taxes had attached prior to Sept. 1, 1879.   *Hamilton County v. Bailey*, 12 Neb., 56.

But it is said that the record fails to show a valid assessment.   The record shows the following:   "The plaintiff offered in evidence the two tax deeds mentioned in the pleadings, to which defendants object as immaterial and incompetent.   Objection overruled, to which defendants except," etc.   The deeds were properly executed and acknowledged, and no objection is made to them on that ground.   *Gregory v. Langdon*, 11 Neb., 166.   These deeds were neither incompetent nor immaterial evidence.   It was necessary under the statutes for the plaintiff to show that he had obtained a tax deed, or deeds, but that the title had failed under it, or them, in order to assert the lien for taxes. The deeds appear to be in proper form and to state all the facts required by statute, except that it appears that the sale took place in the treasurer's office, and not "at the door of the court house," as required by the statute.   *Haller v. Blaco*, 10 Neb., 36.   The deeds were admitted generally and not for a special purpose, and were evidence of all the facts provided by statute except as to the place of sale. This defect rendered them defective as a title, but sufficient upon which the plaintiff could predicate his right of action.

The plaintiff also offered certain tax receipts, and after proving the signatures of the several treasurers, offered the same in evidence.   They were "objected to as incompetent and immaterial, and because they do not conform to the statute."   The objections were overruled, to which the defendants excepted.

A tax receipt is merely evidence of payment. To that extent it is proper and competent evidence; but it is not evidence to prove a lien for taxes paid on land held under a tax title. The existence of such lien must be proved by the assessment rolls, unless from the issue made by the pleadings the existence of the tax is admitted. The following are the allegations of the answer as to the taxes assessed on said land: "The said defendants further admit that on the 29th day of Jan., 1876, the said plaintiff purchased the said land at private tax sale of and from the county treasurer of said county for certain pretended county, state, and city taxes claimed to have been levied for the year 1874, and also at the same time purchased from said treasurer the said land at private tax sale for certain pretended county, city, and state taxes for the year 1873, and also on the 9th day of Nov., 1877, purchased said land at private tax sale from said treasurer for certain pretended state, county, and city taxes, claimed to have been levied for the year 1876. And the said defendants further admit that at the time of said sales the county treasurer of said county executed and delivered to plaintiff the usual certificate of tax sale for each of said sales, and that on or about Feb. 1st, 1878, the said plaintiff surrendered to the county treasurer of said county the two tax certificates dated Jan. 29th, 1876, issued as aforesaid upon sales for taxes of 1873 and 1874, and that thereupon the said treasurer canceled said certificate, and executed, issued, and delivered to said plaintiff tax deeds, as in said petition alleged, and which said deeds were duly recorded, as in said petition set forth." And also the following: "And said defendants, further answering said petition, deny that the taxes mentioned and set forth in said plaintiff's petition, or any portion thereof, were liens upon said land, or that said pretended taxes, or any part thereof, were duly and legally levied, or that by reason of any purchase for or payment of taxes by said plaintiff there is any sum whatever due plaintiff in the premises, or that

)

he is entitled to any relief whatever herein; and said defendants, further answering said petition, say that for the several years mentioned in said plaintiff's petition, and each thereof, said land was never listed for taxation as required by law, nor was any legal assessment for taxation purposes made for any of said years. That for said years, and each thereof, the assessor within the precinct in which said land was situated never qualified as required by law, and in making his assessments of the real estate and other property within said precinct for each of said years, the said assessor—as well as all the other assessors within said county—valued the property within their respective precincts at from one-third to one-half of the true value of the same, and at from one-third to one-half of the amount at which the said assessors respectively considered the true value of said property to be. And the said defendants further say that not only was the assessment pretended to be made on said land for taxation for said years illegal and void, but that said pretended taxes, both county, state, and city, for each of said years, and all the proceedings relating thereto or connected therewith, are illegal and void."

. A party may plead as many defenses as he may have, but the answer will be construed together. If the answer admits the existence of a fact stated in the petition, such as the lien for taxes, but states that the taxes are illegal, the defendant takes upon himself the burden of proof to establish such illegality. And this is what the defendants undertook to do in this case.

In *Dinsmore & Co. v. Stimbert*, 12 Neb., 433, the answer of the defendants stated that "he never signed said note," etc., "nor is his signature attached thereto genuine; but if he did sign said note, or if his signature thereto is genuine, then it was procured through fraud, circumvention," etc., of the payee.

It was held that such answer was a substantial admission of signing the note. So in this case the defendants admit

the existence of the taxes in question, but claim that they are illegal. To sustain the answer they offered in evidence the tax rolls for a number of years; to which various objections are now made, particularly that no oath was attached to the rolls containing the list of real estate. The lists of personal property seem to be kept separate from the lists of real estate, and the oath is attached to the lists of personal property. The case, in that regard, is precisely similar to that of *Hallo v. Helmer*, 12 Neb., 87.

It is claimed that there is no venue to the oath. In the case of *Crowell v. Johnson*, 2 Neb., 146, the affidavit for an attachment levied upon real estate had no venue. The affidavit was sworn to before the clerk of the court in which the action was pending, and this court held that the presumption was that the clerk administered the oath in the proper county. There is no reason why the same presumption should not obtain in this case. The oaths are filed in the proper office and purport to have been taken before an officer authorized to administer the same, and there is no testimony showing that any of the oaths were administered by officers without their jurisdiction.

Objections are made to the legality of the bridge bonds, but there is no issue of that kind made in the answer. A court would not be justified in holding that a quarter of a million dollars of bonds were unauthorized and void unless that question was fully presented in the pleadings. As that question is not raised it will not be discussed.

Objections are made to the descriptions as being indefinite. The testimony of John R. Manchester upon that point would seem to be conclusive. After giving the descriptions for 1873–4–5–6–7 the following questions were asked: "I will ask you whether or not there would be any trouble to any person of average intelligence, familiar with the manner of describing real estate in this county, to know what particular tract of ground is described in each of these books from 1871 to 1877, inclusive?"    *    *    *    *

"No, sir; I don't believe there would be any difficulty."

As to the right of the plaintiff to have the taxes paid by him after he purchased the land added to the decree there is no doubt. The case is analogous to that of a mortgagee paying taxes to protect his security. And the same principle would seem to apply to taxes due upon the land antecedent to the purchase.

Objections are made to the assessment for 1870 as being double what it should be, and for other years as being too low. Whatever relief the defendants could obtain in an equitable action upon offering to pay the amount justly due, it is very clear that neither by their pleadings nor proof have they made a case entitling them to relief in this case. It is the duty of an assessor to assess property "at its actual value at the place of listing." In assessing property the assessor acts judicially, and his judgment, although it may be erroneous and unjust, is not void. Cooley says: "It is of the highest importance that they should be protected in the honest exercise of their judgment. Assessors are therefore not liable for an excessive assessment, even though it may be made such by erroneously including in the estimate property not belonging to the party assessed, nor within the district," etc. Cooley on Taxation, 552. The law fixes a standard of value for all assessors by which they are to be guided in making assessments, and must necessarily leave the question of fixing values to them.

In conclusion, we see no reason to change our former decision. It is very clear that justice has been done, and that this property was lawfully assessed and should be liable for the taxes assessed against it. As was said in the case of *Wood v. Helmer*, 10 Neb., 75, "The burden of taxation is intended by the law to be laid equally upon all taxable property in the state. No property, except that specifically excepted, of which this is not a part, is exempt from taxation. All property is protected by the law.

Why should it not contribute its proportion towards the maintenance of the government, unless for some special reasons the tax may be unjust or oppressive?" There is no error in the record, and the judgment is affirmed.

LAKE, CH. J., dissents, on the ground that the plaintiff's title under his tax deeds is not shown to have been adjudged invalid, or that it has failed.