Vahlberg v. Keaton.

## VAHLBERG V. KEATON.

1. USURY: *Reserving interest in advance: Act of 1875.*
   The provision of the act of Feb. 9, 1875, (Mansf. Dig., sec. 4736), to the effect that it shall be lawful for all persons loaning money in this State, to reserve or discount interest upon any commercial paper, mortgage or other securities, at any rate of interest agreed upon by the parties, not exceeding ten per cent., does not violate section 13, article 19, of the constitution, prohibiting usury, and is valid as far as it relates to transactions of a commercial kind, in short time paper.

Vahlberg v. Keaton.

2. SAME: *Same.*

Where a note for loaned money is made payable in three months without interest until due, it is not usury to reserve in advance out of the sum for which it is given, interest thereon at the highest legal rate, from the date of the note to its maturity.

3. SAME: *Bonus paid to agent of borrower.*

A sum paid by the borrower of money to his own agent for procuring the loan, is not paid for the loan or forbearance of the money thus obtained, and will not, although in excess of the highest lawful interest, constitute usury.

4. SAME: *Bonus paid to agent of lender.*

A lender cannot lawfully receive for the forbearance of his money more than ten per cent. per annum. And where his agent receives from the borrower a bonus in excess of the highest lawful interest, either with his knowledge or under circumstances from which the law will presume he had knowledge, the transaction is usurious. But if the agent receives such bonus without the lender's knowledge and under circumstances from which his knowledge can not be reasonably presumed, then it will not make the loan usurious.

APPEAL from *Garland* Circuit Court.

J. B. WOOD, Judge.

*R. G. Davies*, for appellant.

The evidence in this case shows that the broker was the agent of the borrower. If a greater amount than ten per cent. was exacted, it was for the broker's commissions, notary's fees, etc., and did not constitute the loan usurious. See 9 Ark., 23; 25 Id., 190, 258; 116 U. S., 98; 23 Fed. Rep., 162; 46 N. J. Law, 35; 106 Ill., 549; 31 Minn., 495; 91 N. Y., 324; 92 N. Y., 34; 13 Neb., 157.

*J. M. Harrell*, for appellee.

The evidence in this case makes a clear case of usury, and no pretence that Smith the broker, was the agent of the borrower can validate the loan. While it may be contended that there must be a *corrupt intent*, yet is it true that the law pre-

sumes that one intends the necessary consequences of his acts, and *presumes, even, in opposition to the fact*, that he knew those acts were usurious and unlawful.   25 Ark., 190; Ib., 258;  5  Am. Dec., 424; 24 Neb., 527.   See, also, Tyler on Usury, secs. 393 and 395.

2.   Every subsequent security given for a loan originally usurious, however remote or often renewed, is subject to the plea of usury.   11 Neb., 465; 9 N. W. Rep., 648; 9 Iowa, 354;  11 Rep., 847.

3.   An undisclosed principal is liable though agency not known.   The usurious acts of the broker are the acts of his principal.   34 Am. Dec., 530.

4.   But it is contended, even if the broker was the lender's agent, if he exacted unlawful interest without authority or knowledge of his principal, the loan is not usurious, citing 116 U. S., 98.   This was an Iowa case, whose statute differs from ours.   But see 100 Ill., 611;  13 Neb., 157;  32 N. Y., 165,  reviewing 21 N. Y., 219;  Abb. N. Y. Dig., vol. 8, p. 950.

Our constitution makes usurious contracts *void*, and no agency can validate them under any circumstances.

HEMINGWAY, J.

The appellant, claiming title under the appellee, brought ejectment in the Garland Circuit Court to recover of her two parcels of land.   The lands had been sold under the power contained in two deeds of trust executed by her, and the appellant had purchased them.   She seeks to defeat the title thus acquired, upon a plea that the deeds of trust were each given to secure usurious loans from the appellant to her.

The case was tried by a jury.   There was verdict and judgment for the appellee, defendant in the court below. The appellant assigns as grounds to reverse the judgment,

Vahlberg v. Keaton.

that the court erred in instructing the jury. It is contended on the other hand, that such error, if committed, was without prejudice to the appellant, for the reason that upon the evidence no other verdict than the one found by the jury, could have been rendered. The evidence conclusively establishes the following facts:

The appellee applied to one O. F. Smith, a broker in Hot Springs, for a loan of three hundred dollars; Smith procured that amount from the appellant, and delivered to him one of the notes and deeds of trust to which the taint of usury is now imputed; the note was for $300, due in three months, without interest until due; Smith paid to the appellee $261 of the amount procured from appellant, and returned to the appellant the amount of the interest on the note for three months at ten per cent. per annum. Smith retained the amount of his own commissions, and the cost of acknowledging and recording the deed of trust. Whether this exhausted the balance or not, is left in doubt. Afterwards the appellee applied to Smith for a loan of one hundred dollars; Smith procured from appellant one hundred and twenty dollars, and delivered to him the appellee's note for that amount, due in three months without interest until due, with a deed of trust on part of the land in controversy, to which note and deed of trust the defendant imputes the taint of usury. Smith gave to appellee one hundred dollars of the amount thus procured, returned to the appellant the amount of the interest on the note for three months at ten per cent. per annum, and retained out of the balance the amount of his own commissions with fees for acknowledging and recording the deed of trust. Whether this exhausted the balance or not, is left in doubt.

The appellant contends that upon each loan he received

interest in advance at the rate of only ten per cent. per annum, while the appellee contends that he received more.

The notes were not satisfied. The lands were sold under the power in the two deeds of trust, and the appellant pur-chased them.

Usury is charged, First, because the lender reserved in-terest in advance, upon the face of the note at the highest lawful rate of interest, and second, because in addition to the highest lawful interest, paid directly to the lender, inter-est in excess thereof was paid, by way of bonus, to Smith.

As the notes were given for the entire amount applied for, and as the amount actually received by the borrower was less than such amount, by the amount deducted for interest, it is contended that this constitutes usury to a mathematical cer-tainty.

1. Usury: Reserving interest in advance: Act of 1875.     The constitution denounces the taking of usury, and upon all contracts for its payment, impresses the stamp of absolute nullity. This blight covers the entire transaction; it extends to the principal, as well as to the unlawful interest contracted for. Besides this, the constitution requires the general as-sembly to prohibit usury by law. Con. 1874, Art. 19, sec. 13. The general assembly which convened within a few weeks after the constitution was adopted, in the attempt to execute the mandate above, enacted a statute against usury. In it, it is provided among other things, that all persons loaning money in the State, shall be authorized to reserve or discount interest, upon any note, bond, bill, draft, accept-ance or other commercial paper, mortgages or other securi-ties, at any rate stipulated or agreed upon by the parties, not to exceed ten per cent. Acts 1874–5, page 145; Mans-field's Digest, sec. 4736.

Unless the legislative interpretation of the terms of its man-

date was in violation thereof, it is clear that usury can not be imputed to the reserving in advance of the highest lawful rate of interest. Although the statute was intended to enforce, if it in fact violates the provisions of the constitution, it is void. The language of the constitution, as of other similar instruments, is general and comprehensive. It deals with large topics couched in broad phrase; it attempts neither minute definition or enumeration. It should be so construed as to subserve its broad purposes, and in the accomplishment of this end, it should not be subjected to the application of arbitrary rules of construction, which it is said, are more often resorted to as aids in ingenious attempts to make the constitution say what it does not, than with a view to make it express its real intent. Endlich Int. of Stat., sec. 506; Cooley's Con. Lim., 101.

As a constitution does not deal in detail or enumeration, we should not give it so broad a meaning as will carry it beyond its true sense and spirit, nor apply to it such narrow or constrained views as to defeat the object of those who framed it. Cooley's Con. Lim.; *People v. Fancher*, 50 N. Y., 291; *People v. Cowles*, 13 N. Y., 350; *Temple v. Mead*, 4 Vt., 535.

It has been said by a court distinguished for its learning and ability, that conventions do not always use language with mathematical accuracy, and that in them exceptions and qualifications are sometimes implied when not expressed. *Kennedy v. Gies*, 25 Mich., 83.

It is also said to be a correct rule in constitutional interpretation, to construe it not according to its technical meaning, but according to the acceptation of those who adopted it. The *State v. Mace*, 5 Md., 337–51.

Mathematical scope and technical signification, should each

yield to the purposes of the instrument, to be ascertained upon an examination of its provisions, and a consideration of the evils it was intended to remedy, and the benefits it was intended to secure. The meaning may be drawn from all these sources, and should be in consonance with each of them. It must be presumed that it was framed and adopted in the light and understanding of prior and existing laws, and with reference to them. When the framers of a constitution employ terms, which, in legislative and judicial interpretation, have received a definite meaning and application, which may be either more restricted or more general, than when employed in other relations, it is a safe rule to give to them that signification sanctioned by the legislative and judicial use. *Dailey v. Swope*, 47 Miss., 367–83.

Nor will it be presumed, that the constitution intended to destroy or change the existing laws, except as such intent is manifested by its spirit and letter. Endlich Con. Int., sec. 520.

Applying these rules to the construction of the clauses under consideration, it becomes material to ascertain, whether its terms had received judicial interpretation before it was incorporated into the constitution.

The statute of 12 Anne provided in substance, that no person should take directly or indirectly for loan of money, etc., interest at a higher rate than five per cent. per annum; and that all contracts whereby there was reserved or agreed to be paid, interest at a higher rate; should be utterly void. The question came before the court of common pleas under this statute, and Sir Wm. Blackstone "conceived that interest may as lawfully be received beforehand for forbearing, as after the term is expired, for having forborn." *Lloyd v. Williams*, 2 Wm. Blackstone, 792.

The same principle was approved under the same statute· in so far as it applied to commercial transactions in bills and notes. *Auriol v. Thomas*, 2 T. R., 52; *Marsh v. Martin- dale*, 3 B. & P., 154; *Floger v. Edwards*, 1 Cowp., 112.

In the case last above, the court say, "upon a nice calculation it will be found that the practice of the banks in discounting bills, exceeds the rate of five per cent.; for they take interest upon the whole sum, but pay only part of the money, viz: by deducting the interest first, yet this is not usury." Although this practice was held lawful under the usury laws, it was not permitted to become a cover for usury. In the case of *Marsh v. Martindale, supra.*, the court after approving this construction of the law, to the extent indicated, says, "No shift will enable a man to take more than legal interest upon a loan."

If any English court ever gave to the statute of 12 Anne any other construction, it has not come within our knowledge. Its construction is of the highest importance in construing all subsequent legislation upon the subject, because it has been taken as the model for such subsequent legislation. Usury laws differ widely as to the effects of usury, but there are slight differences in defining its elements. As the American States have adopted the English statute as a model, so the American courts have adopted the construction given it by English courts. So we find the statement, that "the courts uniformly hold, at the present day, that the interest for ordinary paper, having the usual time to run, such as is the custom of banks, may be taken in advance, by way of discount, and not subject the paper to the taint of usury." Tyler on Usury, pp. 298–338; 3 Par. Con., pp. 131, 132 and note; Morse on Banks and Banking, p. 133; *Bank v. Johnson*, 31 Me., 414; *Bank v. Butts*, 9 Mass., 49; *Fleck*

*ner v. Bank*, 8 Wheat, 354; *Bank v. Osgood*, 15 Johns., 162. Although this relaxation of the prohibition against usury was first sanctioned in the transaction of banks and other corporations authorized to make discount, a distinction could not be made against individuals and it became universal. 3 Par. Con., p 131; *Bank v. Butts*, 9 Mass., 49; *Marsh v. Martindale, supra; N. Y. F. Ins. Co., v. Ely*, 2 Cowen, 703; *Cole v. Lockhart*, 2 Cart. (Ind.), 631; *Parker v. Cousins*, 2 Grat., 372.

The question has never been expressly ruled by this court. In an action on a bond, bearing ten per cent., payable semi-annually in advance, given to the Commissioner of Internal Improvements, for borrowed money, the court held the instrument void for usury. Although not decided, the principle of the cases herein cited, seemed to be approved by the court, which held it inapplicable to the case under consideration, because the bond was not intended to circulate as a negotiable instrument for the benefit of trade. *Hogan v. Hensley*, 22 Ark., 413. It was not within the rule for the further reason, that the bond was not "ordinary paper, having the usual time to run, such as is the custom of banks" to deal in. As the Arkansas statute then in force, was in all essential features like the similar statutes of England and the other states, which had been fully and uniformly construed, it can not be doubted that a similar construction would have been given. The like usage certainly obtained and was acquiesced in in this State.

The first prohibition against usury in Arkansas was contained in the act of 1838. It was in force continuously until 1868. Then the administration of the State government changed hands, and a constitution was adopted which provided that no law limiting the rate of interest for which per-

Vahlberg v. Keaton.

sons might contract, should ever be passed. In 1874, after 2. SAME.
the administration of the government had been restored to
those from whom it was taken in 1868, the present prohibi-
tion against usury was incorporated into the constitution.
There was no intent to change the usury laws that for thirty
years rested upon the statute books of the State; but rather
to remove the inhibition against such laws, and to restore
them upon a safer, more permanent and stable basis. The
clause of the constitution is no broader in its terms, and
seems to reach no further in its purpose than the act of 1838,
the act of 12 Anne, or the acts of the other states, upon the
subject. The framers of the constitution intended only to
make the prohibition against usury, as it had formerly been
understood, a part of the organic law, and not leave it to de-
pend on the discretion of the legislators or the chances of
party ascendency. Such being the purpose of the constitu-
tion, and such the meaning given statutes embodying its
terms by previous judicial construction, it follows that it will
receive the same construction placed upon the similar stat-
utes. This conclusion receives support in the fact, that the
legislature meeting very soon after its adoption, dominated
by the purpose that controlled in its adoption, and charged
with the duty of carrying it into effect, enacted the statute
referred to. We consider the act valid so far as it relates to
transactions of a commercial kind in short time paper.

The appellant collected the highest lawful rate of interest;
in addition to this, Smith, who acted as agent either of ap-
pellant or appellee, received a bonus for his services. It is
controverted whether he acted as the agent of the one, or of
the other; this involves a question of fact to be submitted to
a jury, and upon its finding would perhaps depend the de-
cision of the case.

Vahlberg v. Keaton.

3. Bonus paid to agent of borrower.    If he acted as the agent of the borrower alone, whether he received or did not receive, a bonus, is immaterial to the plea of usury.    What the borrower pays to his own agent for procuring a loan, is no part of the sum paid for the loan or forbearance of money. *Merck v. A. F. L. Mfg. Co.*, 7 S E. Rep., 265; *McFarland v. Carr*, 16 Wis., 276; *Ballinger v. Bourland*, 87 Ill., 513; *Philo v. Butterfield*, 3 Neb., 256; *Gray v. VanBlarcom*, 29 N. J. Eq., 454; *Eddy v. Badger*, 8 Bis., 238.

If he acted as the agent of the lender, the effect is involved amid a mass of conflicting judicial utterances, embarrassing and irreconcilable.

Some courts hold, that if the agent collect the bonus for his own exclusive benefit, and the lender receives no part of it, that this will not constitute usury, whether the lender knew of it or not. *Conover v. VanMeter*, 18 N. J. E., 481; *Acherson, et al., v. Chase*, 9 N. W. Rep., 734. See, also, *Mackey v. Winkler*, 29 N. W. Rep., 337; *N. E. M. S. Co. v. Gay*, 32 Fed. Rep., 636.

Others hold that, although the lender had no knowledge that his agent received a bonus from the borrower, still it will constitute usury if he did receive it. *Philo v. Butterfield*, 3 Neb., 256; *N. E. M. & S. Co. v. Hendrickson*, 15 C. L. J., 132; 13 Neb., 157; *Olmstead v. N. E. M. Sec. Co.*, 11 Neb., 487; *Cheney v. White*, 5 Neb., 261; *Austin v. Harrington*, 28 Vt., 130.

4. Bonus paid to agent of lender.    We will not discuss what we deem to be obvious vices in each doctrine above stated, but announce the rule which we consider most in consonance with reason and justice, and best sustained by authority.    The lender may receive for the forbearance of money ten per cent. per annum and no more. In excess of that his agent can receive no bonus from the

borrower.   If the agent do receive from the borrower a bonus
in excess of the highest lawful interest, either with his knowl-
edge, or under circumstances from which the law will pre-
sume he had knowledge, then the transaction is usurious;
while, if the agent received the excessive bonus without his
knowledge, and under circumstances from which his knowl-
edge could not be reasonably presumed, the transaction
would not be usurious.   What circumstances will raise the
presumption of knowledge must be determined in each case,
in accordance with the principle by which knowledge is im-
puted to persons, in controversies generally.   We will add
now, that where a lender places money with an agent to be
loaned, with the understanding that he must receive the high-
est lawful interest, and that the agent must look to the bor-
rower for his commissions, the circumstances necessarily im-
pute knowledge to the lender, of an usurious bonus received
by the agent upon each loan.   And if the money was so
placed and nothing said as to the compensation of the agent,
but the lender demanded for himself the highest lawful rate
of interest, the same result would follow, unless the relations
between the lender and his agent were such as reasonably to
justify the belief that the agent would act solely for the ac-
commodation of the lender and without expectation of re-
ward.   It would not be right to punish the principal for the
unlawful acts of his agent, done without his authority or
knowledge, either express or implied; but although the acts
be unlawful, if they are done by the authority or with the
knowledge, express or implied, of the principal, they are the
acts of the principal, for which upon correct principle he is
and should be held responsible.   To hold otherwise, would
be to permit the lender to exact the highest lawful interest,
and the payment of a debt for which he is bound; if this

could be done, why not permit the lender to collect excessive interest and excuse his misconduct by showing that he had used the excess in paying a debt he owed? *Payne, et al., v. Newcomb, et al.*, 100 Ills., 611; *Condit v. Baldwin*, 21 N. Y., 219; *Bell v. Day*, 32 N. Y., 165; *Rogers v. Buckingham*, 33 Conn., 81; *McFarland v. Carr*, 16 Wis., 276; *Call v. Palmer*, 116 U. S., 98.

The instructions were given under a mistaken view of the law, and state it incorrectly; for that reason the judgment must be reversed and the cause remanded for a new trial in accordance with the law as herein announced.