## VanDeventer v. Smith.

## Opinion delivered May 8, 1916.

Usury—Act of agent—knowledge of lender.—A loan will not be held usurious where the lender was not aware that a sum greater than the legal rate of interest was exacted from the borrower by the agent or broker.

Appeal from Benton Chancery Court; *T. H. Humphreys,* Judge; affirmed.

*Rice & Dickson,* for appellant.

The loan was usurious and void. Cates was the agent of the lender. 62 Ark. 378; 51 *Id.* 544; Kirby's Digest, §§ 5390-1.

*McGill & Lindsey,* for appellee.

To sustain the plea of usury, it must be shown that the bonus or commission was paid with the knowledge of the lender to the agent of the lender, and that such bonus when added to the interest exceeds the lawful rate. 51 Ark. 534; *Ib.* 546; 62 *Id.* 370; 83 *Id.* 31; 91 *Id.* 458; 105 *Id.* 653; 60 *Id.* 288; 98 U. S. 103; 51 Ark. 546. Cates was not appellee's agent and she had no knowledge of any bonus being paid.

Smith, J. Appellant brought suit to cancel a mortgage and a note which it secured upon the ground that the debt there secured was usurious. The note was for the sum of $700, due twelve months after date, and bore interest at 10 per cent. after maturity. It was alleged that the agreement under which the loan was made was an unlawful and usurious one whereby appellee was to, and did, retain, $100 for the use of the remaining $600 for one year. The answer denied all the material allegations of the complaint and in a cross-bill the foreclosure of the mortgage was prayed. In the answer it was alleged that, although the note had been assigned to one G. D. Cates, this was done only for the purpose of collection.

Cates testified that he was the president of the People's Bank, of Southwest City, Missouri, and that he made the loan through representatives of appellant who ap-

plied to him for the loan for her. The mortgage was given on an undivided two-thirds interest in a brick building in Gravette, Arkansas, and for some reason, for which no satisfactory explanation is given, a fire insurance policy on this building was taken out and assigned to the bank. Cates testified, however, that the bank had no interest in the loan and made it only for appellee, who was one of its depositors, and that he had never seen the insurance policy and did not know it had been made payable to the bank, and that appellee knew nothing of any of the negotiations except that she was making a loan on which she would receive, and did receive, interest at 8 per cent. paid in advance, and that he was acting for Austin and appellant's son, who were her representatives, and that had appellee turned the application down he would have applied to some one else. Interest for one year in advance was charged at 8 per cent. and appellee's account with the People's Bank was charged with $644, which amount represented the face of the note less the year's interest which was charged and deducted in advance. The transaction was closed so far as appellant was concerned by a draft for $600, which was drawn by the First National Bank, of Gravette, on the People's Bank. Witness and one Yeargain, who appears also to have been acting for appellant in the transaction, divided the excess of the 8 per cent., but appellee was not a party to and knew nothing of this arrangement. A Mr. Austin testified that he was the president of the First National Bank at Gravette and had talked with Cates over the 'phone about the loan and that it was at Cates' suggestion that the policy was made payable to the People's Bank. That he did not represent appellant in getting the loan, but talked with her about it and told her she was being robbed and advised her not to pay the $100. A Mr. Havens testified that he was the acting cashier of the People's Bank, and that Yeargain in applying to this bank stated that he could make $100 if he could secure a loan for appellant for $600. Appellee was not present at the time and knew nothing of this conversation. This witness admitted

writing a letter in which he demanded $84 for the second year's interest on this loan, and no explanation of that fact is offered.

Appellee testified that she had taught school in Southwest City and had some money in the People's Bank there which she told Cates she wanted to loan, that Cates had made certain loans for her, but that in making this loan she drew a check on the First National Bank of Hamilton, Missouri, for $644, which she made an exhibit to her deposition, and which was used in closing up the loan by the People's Bank. She testified that she never paid the People's Bank, or Cates, any commission for making this loan, and that neither the bank nor Cates represented her in the matter, but represented appellant. Her explanation of drawing the check on the bank at Hamilton was that that bank did not allow her as much interest on her deposits as did the People's Bank at Southwest City, and that she knew nothing of the transactions except that she was making a loan of $700 at 8 per cent., with the year's interest paid in advance. A Mr. Yeargain testified that Austin applied to him for the loan, but he stated to Austin that he did not have the money, but would try to get it, and that he made application to Cates for the loan. That the check which was received from appellee was for $644, and he telephoned to Austin and Van Deventer when the check had been received at the People's Bank, and when it was cashed he got $44. A son of appellant testified that he went to Southwest City to arrange for a loan of $700, and asked Yeargain if he could make the loan, but Yeargain said he could not, but would get it from Cates or the bank, and that he arranged with Cates for the loan, and that Cates retained $100. It was not contended, however, that appellee was present at nor that she was a party to any of these negotiations.

The court dismissed the complaint for want of equity and made a finding that the note was not usurious and decreed a foreclosure of the mortgage, and this appeal has been duly prosecuted.

It is manifest that some one has required appellant to pay $100 for the use of $600 for one year; but we can not say that appellee was a party in any manner to this agreement. Indeed, it is admitted that appellee only received $56, which was a year's interest in advance at 8 per cent. and that transaction, of course, was not usurious.

It is insisted, however, that the loan was either made for and by the People's Bank for itself and subsequently sold to appellee, or that if it was made for appellee, Cates was her agent in the exaction of the usurious interest and received as his compensation for making the loan for her the sum of money which makes the loan usurious. But we can not say that the chancellor's finding to the contrary is against the preponderance of the evidence.

The parties cite and rely upon the cases of *Thompson* v. *Ingram,* 51 Ark. 546, and *Vahlberg* v. *Keaton,* 51 Ark. 534. In these cases it is said that if the person making the loan acted as the agent of the borrower alone, whether he received or did not receive a bonus is immaterial on the plea of usury. That what the borrower pays to his own agent for procuring a loan is no part of the sum paid for the loan or forbearance of money. Where the person who negotiates the loan acts for the lender the rule is announced in the cases cited as follows:

"The lender may receive for the forbearance of money 10 per cent. per annum and no more. In excess of that his agent can receive no bonus from the borrower. If the agent do receive from the borrower a bonus in excess of the highest lawful interest, either with his knowledge, or under circumstances from which the law will presume he had knowledge, then the transaction is usurious; while, if the agent received the excessive bonus without his knowldge, and under circumstances from which his knowledge could not be reasonably presumed, the transaction would not be usurious. What circumstances will raise the presumption of knowledge must be determined in each case, in accordance with the principle by which knowledge is imputed to persons, in controversies generally."

Other facts than those recited are testified to in behalf of the respective parties, but we have set out the salient features of the evidence.

Although the proof shows a scheme to exact more than 10 per cent. for the use of this money, we can not say that the proof shows appellee was a party to it, and under the test announced in the cases cited we think appellee should not be charged with the responsibility for Cates' participation in that scheme, and the decree of the court below is, therefore, affirmed.